Tom C. McCALL and David
B. McCall, Appellants,

v.

TANA OIL AND GAS CORPORATION
and Robert B. Rowling, Appellees.

No. 03–00–00347–CV.

Court of Appeals of Texas,
Austin.

July 26, 2001.

Rehearing Overruled Oct. 18, 2001.

---

Tom C. McCall, McCall & Ritche, L.L.P., Austin, for appellants.

Roberta S. Dohse, R. Clay Hoblit, Chaves, Gonzales & Hoblit, L.L.P., Corpus Christi, for appellees.

Before Justices KIDD, YEAKEL and POWERS.*

JOHN E. POWERS, Justice, (Retired).

Tom C. McCall and David B. McCall (the "McCalls") appeal from a judgment that they take nothing by their claims against Tana Oil and Gas Corporation and Robert B. Rowling ("appellees"). We will affirm the judgment in part and reverse in another part, remanding to the trial court the part reversed.

### THE CONTROVERSY

John Niemeyer retained the McCalls to represent him in litigation with Tana Oil and Gas Corporation. In Niemeyer's behalf, the McCalls sued the corporation on October 19, 1995, in the Fayette County district court, to recover mineral royalties allegedly owed Niemeyer.[1] Very soon thereafter, appellees alleged various causes of action in a suit against the McCalls, Niemeyer, and other members of the Niemeyer family, filed November 2, 1995, in a district court of Nueces County. On April 22, 1998, in an original mandamus action brought by the McCalls, the Thirteenth Court of Appeals ordered abatement of the Nueces County suit, but not before the McCalls had incurred substantial attorneys' fees defending against appellees' Nueces County suit. *See In re McCall,* 967 S.W.2d 934 (Tex.App.—Corpus Christi 1998, orig. proceeding).

The McCalls thereafter sued appellees in a Travis County district court alleging appellees' Nueces County suit was groundless and maliciously conducted for the express purpose of disrupting the Fayette County litigation by interfering with the McCalls' representation of Niemeyer. Upon such allegations, the McCalls founded the following causes of action: tortious interference with the McCall–Niemeyer contract; abuse of process; and malicious prosecution of a civil proceeding. The trial court appears to have decided each cause of action adversely to the McCalls as a matter of law, which the McCalls claim was reversible error in each instance. Before we turn to those matters, however, we will upon our own motion inquire whether the judgment is not within our power to review because it fails to adjudicate all three causes of action brought by the McCalls. *See K & S Interests, Inc. v. Texas Am. Bank/Dallas,* 749 S.W.2d 887, 891 (Tex.App.—Dallas 1988, writ denied).

### APPELLATE JURISDICTION

*Abuse of Process.* The McCalls' action for abuse of process was decided adversely to them on appellees' motion for summary judgment, as stated expressly in an interlocutory order signed by the trial judge on May 10, 2000.

*Tortious Interference.* The McCalls' action for tortious interference with the McCall Niemeyer contract was determined adversely to the McCalls, as a matter of law, in response to appellees' motion for directed verdict.

*Malicious Prosecution.* While the trial-court rulings on the two foregoing actions were expressly made a part of the judg-

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The Fayette County suit was tried and appeals were taken from the resulting judgment to the Third Court of Appeals by both Tana Oil and Gas Corporation and Niemeyer. *See Niemeyer v. Tana Oil & Gas Corp.,* 39 S.W.3d 380 (Tex.App.—Austin 2001, pet. denied).

ment instrument quoted at length below, the McCalls' action for malicious prosecution is not mentioned expressly in that instrument and is not the subject of any interlocutory trial-court order.

It appears from the record that another trial judge heard appellees' motion for summary judgment directed at the McCalls' malicious-prosecution claim. That judge evidently sent to counsel of record a "letter ruling" dated December 9, 1999. Therein, the judge stated appellees' motion was "granted" as to the McCalls' malicious-prosecution claim and directed appellees to "submit an appropriate order." No such interlocutory order appears in the clerk's record; indeed, the "letter ruling" is before us solely in the form of a copy attached to each party's brief in this Court. The copy does not bear the district clerk's file mark and nothing in the record suggests the letter was filed with the district clerk.[2] We therefore conclude that the record fails to show that appellees' motion for summary judgment as to the malicious-prosecution claim was adjudicated before the case was called for trial on May 8, 2000. *See Goff v. Tuchscherer*, 627 S.W.2d 397, 398–99 (Tex.1982); *In re Fuentes*, 960 S.W.2d 261, 264–65 (Tex. App.—Corpus Christi 1997, orig. proceeding); *Mays v. Foremost Ins. Co.*, 627 S.W.2d 230, 231–32 (Tex.App.—San Antonio 1981, no writ).

▇▇ On May 15, 2000, the trial judge signed an "Amended Final Judgment Based Upon Directed Verdict." The instrument recites as follows:

Be it remembered that, on the 8th day of May, 2000, the above-entitled and numbered cause was regularly reached and called for trial, and came the parties to said cause, in person and by counsel,

and announced themselves ready for trial. Whereupon came a jury of twelve (12) good and lawful men and women, who were duly impaneled and sworn by the Court and ... thereupon said cause proceeded to trial before said Court and jury.

The Court, having entered [sic] an order granting [appellees'] Motion for Summary Judgment on Abuse of Process, and having entered an order granting [appellees'] Motion for Directed Verdict on Claim for Tortious Interference, and there being no remaining live claims, dismissed the jury.

It is, therefore, ordered, adjudged and decreed, by the Court that Directed Verdict and Final Judgment in favor of [appellees] should be entered and that [the McCalls] take nothing against [appellees]. It is further ordered by the Court that all costs of this suit be and the same are hereby adjudged against the [McCalls], and that [appellees] shall recover such costs from [the McCalls], for which execution shall issue if not timely paid.

It is further ordered that all relief not expressly granted herein is denied.

Is the foregoing a final judgment for purposes of appeal even though it does not adjudicate expressly the McCalls' malicious-prosecution action?

When a judgment not intrinsically interlocutory in character is rendered and entered in a case regularly set for a conventional trial on the merits ... it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and all issues made by the pleadings between such parties.

*North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966). That

---

**2.** The McCalls designated the "letter ruling" for inclusion in the clerk's record. Because a copy of the document was not included therein, we assume the "letter ruling" was never filed with the clerk.

the instrument signed May 15, 2000, was intended to be a final judgment is indicated by the recitals contained therein to the effect that the case was set and called for trial before a jury and the cause proceeded to trial; the decree that the McCalls take nothing as against appellees; the declaration that all relief not granted expressly is denied; and the recital that the jury were dismissed because, in effect, all the McCalls' claims had been decided against them on questions of law, leaving nothing for the jury to determine.

The effect of the instrument signed May 15, 2000, is to dispose of the McCalls' malicious-prosecution claim *by necessary implication* and as a matter of law. *See Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex.1995); *North East Indep. Sch. Dist.*, 400 S.W.2d at 895; *Ferguson v. Ferguson*, 161 Tex. 184, 338 S.W.2d 945, 947 (1960); *Hargrove v. Insurance Inv. Corp.*, 142 Tex. 111, 176 S.W.2d 744, 746 (1944); *Trammell v. Rosen*, 106 Tex. 132, 157 S.W. 1161, 1162 (1913). Whether the disposition was by way of ruling as a matter of law on appellees' unresolved motion for summary judgment (which remained pending for want of an interlocutory order) or by way of the trial judge's power to withdraw an issue from the jury, as discussed in footnote four *infra*, the result is the same.

We hold accordingly that the judgment instrument signed May 15, 2000, resolved all issues between the parties and it is, therefore, a final judgment for purposes of appeal.

## DIRECTED VERDICT—TORTIOUS INTERFERENCE

In answer to the McCalls' tortious-interference claim, appellees interposed the affirmative defense of legal justification and a plea that the damages sought to be recovered for the alleged interference consisted solely of attorneys' fees, which are not recoverable as a matter of law because not authorized by contract or statute.[3] It appears to be undisputed that attorneys' fees incurred by the McCalls in defending the Nueces County suit are the principal injury for which they seek damages in their tortious-interference action.

■ After the jury were impaneled, but before any evidence was adduced, the trial judge sustained appellees' motion for directed verdict challenging the McCalls' tortious-interference claim. A directed verdict is ordinarily made, at the earliest, when the plaintiff rests. *See* 4 McDonald, *Texas Civil Practice* § 24:49, at 129–30 (1992). Directed verdicts have also been sustained, however, where the substantive law did not as a matter of law permit a plaintiff to recover on his pleaded cause of action. *See, e.g., Anderson v. Vinson Exploration, Inc.*, 832 S.W.2d 657, 665 (Tex. App.—El Paso 1992, writ denied) (directed verdict on ground that investor not "consumer" under Deceptive Trade Practices Act); *Dillard v. Broyles*, 633 S.W.2d 636, 644 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.) (directed verdict on ground that statute of limitations barred plaintiff's action as matter of law). Under this theory, the timing of a directed verdict would appear to be immaterial. It is on this basis that we discuss appellees' contention that the McCalls could not as a matter of law prevail on their tortious-interference claim.

The judgment, signed May 15, 2000, determines as a matter of law that the

---

**3.** Appellees urged a special exception on the same ground. It does not appear, however, that a ruling was obtained thereon before judgment. *See* Tex.R. Civ. P. 90; *In re Moore*, 890 S.W.2d 821, 826–27 (Tex.App.—Amarillo 1994, no writ).

McCalls cannot recover on their tortious-interference claim for three stated reasons: (1) attorneys' fees as damages are not recoverable absent a contract or statute providing therefor; (2) a pleading defect on the McCalls' part; and (3) appellees' affirmative defense of justification had been established as a matter of law. A fair reading of appellees' motion for directed verdict reveals that it states only one ground for directed verdict, namely appellees' affirmative defense of justification. For purposes of discussion, however, we will assume that appellees' motion also requested a directed verdict on the other two grounds recited in the judgment.[4] We will discuss each of the three grounds.

■ *Attorneys' Fees as Damages.* The judgment declares in effect that the McCalls did not suffer any compensable loss or injury because their only claimed injury consisted of attorneys' fees incurred by them in defending against appellees' Nueces County suit; and, as a matter of law such fees are not recoverable, even as damages, because not authorized in this instance by statute or contract. We believe a directed verdict on this ground constituted reversible error.

■ It is well established under the "American Rule" that attorneys' fees, *as such,* are not recoverable unless authorized by contract or statute. *Turner v. Turner,* 385 S.W.2d 230, 233 (Tex.1964). This general rule is not, however, without exception. In some circumstances, *damages* measured by a plaintiff's attorneys' fees *are* recoverable. Where a constable wrongfully denied plaintiff's right to re-

plevy property seized under a writ of sequestration, for example, it was held that the plaintiff could recover from the constable and his surety, *as damages,* the amount of attorneys' fees incurred by the plaintiff to procure approval of his replevy bond. *See Findley v. Mitchell,* 50 Tex. 143, 147–48 (1878).

■ Equitable considerations have led to several narrow exceptions upon which attorneys' fees may be recovered *as damages* even though not authorized by contract or statute. *See generally Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795, 799–800 (Tex.1974). One such exception to the general rule is almost as well-established as the general rule itself: Where the defendant's tort requires the plaintiff to act in the protection of his interests by bringing or defending an action against a third person, the plaintiff "is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred." Restatement (Second) of Torts § 914(2) (1977); *see generally* C.T. Drechsler, Annotation, *Right to Recover as Damages Attorney's Fees Incurred in Earlier Litigation with a Third Person Because of Involvement Therein Through a Tortious Act of Present Adversary,* 45 A.L.R.2d 1183, 1956 WL 11524 (1956 & Supp.2001); *see, e.g., Lesikar v. Rappeport,* 33 S.W.3d 282, 306 (Tex.App.—Texarkana 2000, dism'd as moot); *Baja Energy, Inc. v. Ball,* 669 S.W.2d 836, 838–39 (Tex.App.—Eastland 1984, no writ). It is evident, however, that this exception is not applicable here because the attorneys' fees claimed by the McCalls as damages were

---

**4.** The rules of procedure required that appellees' "motion for directed verdict ... state the specific grounds therefor." Tex.R. Civ. P. 268. This fair-notice requirement is undercut considerably, however, by the trial judge's power to withdraw a case from the jury on his own motion and to render judgement.

*See Rudco Oil & Gas Co. v. Gulf Oil Corp.,* 169 S.W.2d 791, 792 (Tex.Civ.App.—Austin 1943, writ ref'd w.o.m.). We believe it necessary, therefore, to discuss each of the three grounds mentioned as well as any other suggested by the record that might justify the directed verdict.

■ incurred in litigation with a third person, but in litigation with appellees, their present adversary. We believe, however, that another well-established exception to the general rule *is* applicable.

■ In their tortious-interference claim, the McCalls alleged appellees prosecuted their Nueces County suit "without any basis in fact or law" and "maliciously and in bad faith with specific intent to disrupt the contract relationship between" Niemeyer and the McCalls. Other allegations in the McCalls' petition characterize appellees' conduct in similar terms concerning the Nueces County suit. These allegations easily bring the McCalls' tortious-interference action within another exception to the general rule that attorneys' fees are not recoverable, even as damages, unless authorized by contract or statute. This exception authorizes recovery of damages measured by attorneys' fees when the defendant "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (quoting *F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)). For purposes of this exception, "[a]n action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977). If the action itself is brought in bad faith, damages measured by attorneys' fees for the entire proceeding may be recovered; if bad faith exists only in the manner in which the litigation is conducted, damages are made commensurate with that part of the attorney's work and expense necessitated by the defendant's bad-faith conduct. *See Synanon Found., Inc. v. Bernstein,*

517 A.2d 28, 38–39 (D.C.Cir.1986). The bad-faith exception appears to be the basis upon which damages measured by attorneys' fees were awarded in *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 898–99 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (where defendant issued to imposter credit card bearing plaintiff's name, notwithstanding warning to notify plaintiff before issuing credit card in her name, plaintiff entitled to damages against defendant measured by amounts paid plaintiff's attorney in resisting defendant's attempts to collect from plaintiff sums charged by imposter); *Standard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 90–91 (Tex. App.—Beaumont 1997, no pet.) (in plaintiff's action against insurer, plaintiff entitled to damages measured by attorneys' fees incurred by plaintiff in previous suit resulting from defendant's bad faith); *Nationwide Mut. Ins. Co. v. Holmes*, 842 S.W.2d 335, 341–42 (Tex.App.—San Antonio 1992, writ denied) (in plaintiff's action under Deceptive Trade Practices Act, plaintiff entitled to damages against defendant measured by attorneys' fees incurred in attempts to persuade defendant liability insurer to either settle earlier personal-injury action against plaintiff, or indemnify him, where defendant insurer withheld information from plaintiff knowing he would thereby incur additional attorneys' fees in the earlier action).

Because the McCalls' petition invoked the bad-faith exception, the trial court erred in concluding as a matter of law that they could not recover in the present cause damages measured by the attorneys' fees they incurred in defending against appellees' Nueces County suit. We hold accordingly.

■ *Pleading Defect.* The judgment signed May 15, 2000, recites as follows a second ground for directing a verdict

against the McCalls' tortious-interference action as a matter of law:

> Additionally, in response to [appellees'] motion, the [McCalls] have not reformed their pleadings or addressed argument to rebut or avoid [appellees'] argument.

If we understand correctly this rather cryptic sentence, it appears to have two parts, namely: (1) a trial judge had ruled previously that the McCalls' pleading of their tortious-interference claim was defective in some respect; and (2) the McCalls were required to set forth "argument" rebutting an unidentified "argument" advanced by appellees concerning that claim. Referring to this part of the judgment, appellees state in their brief to this Court that "ample opportunities were made available to [the McCalls] earlier in the course of the lawsuit to address the very problems with the damages claims that were at issue in the tortious interference claim." (This refers evidently to appellees' position that attorneys' fees as damages are not recoverable absent a statute or contract so providing.) This quotation from appellees' brief is supported by a footnote reference to a "letter order" signed earlier in the litigation by another trial judge wherein the judge stated he had construed certain grounds in appellees' motion for summary judgment to be special exceptions directed at the McCalls' pleaded causes of action for *abuse of process* and *invasion of privacy*. The "letter order" sustains these special exceptions and gives the McCalls opportunity to amend their pleadings pertaining to abuse of process and invasion of privacy. The "letter order" does not, however, refer to the McCalls' cause of action for tortious interference with the McCall Niemeyer contract. This is not surprising because the McCalls first brought a claim for tortious interference in a supplemental petition filed well *after* the date of the "letter order."

We hold the directed verdict against the McCalls' tortious-interference claim may not rest upon the pleading defect mentioned.

■■■ *Justification.* The judgment signed May 15, 2000, declares finally that "even if [the McCalls] could establish all the elements of this cause of action, the court is of the opinion that as a matter of law [appellees] would prevail on the affirmative defense of justification." We believe the record will not support a conclusion that appellees had established as a matter of law their affirmative defense of justification.

■■■ The basic principles applicable in this connection are as follows:

> "[L]egal justification or excuse is treated as a type of privilege. The party asserting this privilege does not deny the interference but rather seeks to avoid liability based upon a *claimed interest that is being impaired or destroyed by the plaintiff's contract.* Such defenses, which constitute a confession and avoidance, are affirmative in nature. Tex.R. Civ. P. 94. Therefore, ... the privilege of legal justification or excuse in the interference of contractual relations is an affirmative defense upon which the defendant has the burden of proof."

*Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 689–90 (Tex.1989) (emphasis added).

■■■ A defendant may establish the privilege by showing that he acted to further or protect his own legal rights *or* he may show he acted in good faith, to further or protect a colorable legal right even though his claim ultimately proves to be mistaken. The first alternative presents a question of law for the trial court; the second presents a question of fact for the fact-finder because good faith is inherently a question of fact. Motive is immaterial in

connection with the first alternative; it is material in connection with the second. *See Prudential Ins. Co. of America v. Financial Review Servs., Inc.,* 29 S.W.3d 74, 80 (Tex.2000); *Calvillo v. Gonzalez,* 922 S.W.2d 928, 929 (Tex.1996) *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996); *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 211 (Tex.1996); *Bennett v. Computer Assocs. Int'l.,* 932 S.W.2d 197, 204 (Tex.App.—Amarillo 1996, writ denied).

■ Whether a defendant's interference with a contract is justified requires a consideration of the following factors: (1) the nature of the defendant's conduct; (2) the defendant's motive if he claims to have exercised a colorable legal right in good faith; (3) the plaintiff's interests in his contract; (4) the interests sought to be advanced by the defendant; (5) society's interests in protecting the defendant's freedom of action and the plaintiff's contractual interests; (6) the proximity or remoteness of the defendant's conduct to the interference; and (7) the relations between the plaintiff and the defendant. *See Wal–Mart Stores, Inc. v. Sturges,* 44 Tex. Sup. Ct. J. 486, 52 S.W.3d 711 (2001); Restatement (Second) of Torts § 767 (1979).

For purposes of discussion, we will assume the McCalls established that appellees interfered with the McCall–Niemeyer contract, leaving the issue to be whether the interference was privileged *as a matter of law* under the foregoing rules and the record before us.

The initial barrier to appellees' affirmative defense of justification or privilege is the fact that they have never identified any right or interest of theirs that was allegedly affected by the McCall Niemeyer employment contract to which they were strangers. In answer to the McCalls' plea of tortious interference, appellees declared merely that the McCalls' action was "barred by the doctrine of legal justification." In their motion for directed verdict, appellees stated only that their "assertion of a colorable legal right has been established here as a matter of law, since the only act complained of, which is alleged to constitute the act of interference, is the filing of a suit against [the McCalls] in Nueces County." In their brief to this Court, appellees state only abstractions and naked conclusions concerning the defense of justification, such as the following: "Here, the filing of suit or assertion of a claim was privileged" and "[o]ne may be 'privileged' to assert a claim 'even though the claim may be doubtful, so long as it [sic] asserted a colorable legal right.'" Our independent search of the record does not reveal what right or interest of appellees might have been affected by the McCall Niemeyer contract.

■ *As a matter of law,* justification is *not* established when the defendant does not claim a right, colorable or otherwise, that exists under the contract with which he interferes. *See Sterner,* 767 S.W.2d at 689–90; *Bennett,* 932 S.W.2d at 204.

Certain remarks in appellees' brief perhaps suggest a theory that any and all lawsuits are privileged as a matter of law and cannot, therefore, constitute grounds for a tortious-interference cause of action. We reject the theory. "Litigation is a powerful weapon, and when instituted in bad faith for the purpose of causing damage or loss, it is a wrongful method of interference." *Hughes v. Houston Northwest Med. Ctr., Inc.,* 680 S.W.2d 838, 842 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

We believe also that the trial court committed reversible error in sustaining as a matter of law appellees' justification defense because the court could not do so reasonably without an evidentiary showing

as to the following considerations: (1) appellees' motive in filing and maintaining the Nueces County lawsuit, to the extent the directed verdict may rest upon the ground that appellees exercised a colorable legal right in good faith; (2) the interests appellees attempted to advance by their Nueces County suit; and (3) the relations that in fact existed between appellees and the McCalls. *See Sturges,* 44 Tex. Sup.Ct. J. at 490, 52 S.W.3d at 717–19; Restatement (Second) of Torts § 767, *supra.*

Even though none of the foregoing grounds, recited in the judgment signed May 15, 2000, will support a directed verdict against the McCalls' tortious-interference claim, we are obliged to affirm the judgment if it is otherwise supported by the record. *See* 6 McDonald & Carlson, *Texas Civil Practice* § 8:9, at 216 (2d ed.1998). We find nothing in the record, however, that supports judgment as a matter of law against the McCalls' tortious-interference claim.

We therefore sustain the McCalls' first point of error to the effect that the trial court erred in its order that the McCalls take nothing by their tortious-interference cause of action.[5]

### SUMMARY JUDGMENT— ABUSE OF PROCESS

The McCalls contend summary judgment adverse to their claim for abuse of process was precluded by a record showing as to the following: After filing the Fayette County suit in Niemeyer's behalf, Tom C. McCall received a telephone call from a lawyer employed by Tana Oil and Gas Corporation. The lawyer demanded that the Fayette County suit be dismissed or "something would happen." When the McCalls failed to dismiss the suit, appellees carried out the implied threat by bringing the Nueces County suit against the McCalls and others, manufacturing false allegations therein in support of a groundless claim intended to disrupt the Fayette County suit. The McCalls appear to plead that the citations procured by appellees to begin the Nueces County litigation, and all other writs and notices employed by appellees in the course of that litigation, amounted to an abuse of the processes mentioned. The McCalls refer to no particular process.

■ The elements of an abuse-of-process action are as follows: (1) the defendant made an illegal or improper use of process, (2) acting from an ulterior motive, (3) resulting in injury to the plaintiff. *See Bossin v. Towber,* 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 378 (Tex.App.—Texarkana 1989, no writ). The ulterior motive required by the second element does not supplant, supersede, or substitute for the

---

5. We have treated as a single point of error four "issues" brought by the McCalls, which the parties also combined for discussion in their briefs. The "issues" are whether the trial court erred by: (1) directing a verdict before receiving evidence; (2) dismissing the jury on the ground that appellees would "prevail" on their affirmative defense of justification; (3) denying the McCalls a jury trial; and (4) refusing to make findings of fact and conclusions of law in support of whatever factual bases the trial judge used as grounds for his directed verdict. As explained earlier in our opinion, we have discussed the parties' opposing contentions, insofar as they are relevant, under the larger issue of whether the substantive law entitled appellees to judgment as a matter of law, on the tortious-interference claim, on any basis shown in the record. This is, we believe, the main thrust of the parties' respective arguments on appeal. We are mindful that we must construe points of error broadly and liberally in order to obtain a just, fair, and equitable adjudication of the litigants' rights. *See Williams v. Khalaf,* 802 S.W.2d 651, 658 (Tex.1990); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

illegal or improper use of process required by the first element; both elements must be established along with the third. *See RRR Farms, Ltd. v. American Horse Prot. Ass'n, Inc.,* 957 S.W.2d 121, 134 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *Baubles & Beads,* 766 S.W.2d at 378–79; *Martin v. Trevino,* 578 S.W.2d 763, 769 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ The McCalls have not challenged appellees' position that all processes used by them in the Nueces County litigation were employed for their intended purposes. Citation, for example, was procured by appellees and used for its intended purpose of summoning the McCalls to appear and answer appellees' claims in that suit. Consequently, appellees contend, the McCalls cannot establish the first element of a cause of action for abuse of process. We agree.

In their brief to this Court, the McCalls assail the summary judgment against their abuse-of-process claim on the following theory alone:

> It is the McCalls' position that Tana and Rowling, by filing a lawsuit against the McCalls with the purpose of forcing dismissal of a client's collateral lawsuit, abused the process as a matter of law. . . . The filing of fictitious and groundless pleadings against attorneys, who are officers of the court, is an attack upon the judicial system itself which cannot be tolerated in a civilized society. Attorneys, as well as judges, reporters, court clerks and other officers of the court have statutorily imposed duties and obligations. Any attempt to use groundless and harassing litigation to force an officer of the court to abandon his or her duties must be treated as an abuse of process.

The McCalls offer nothing by way of authority or analogy to support the forego-ing theory, and we have been unable to find or imagine any such support. We hold the trial court did not err in its summary judgment that the McCalls take nothing by their abuse-of-process action.

## SUMMARY JUDGMENT—MALICIOUS PROSECUTION

■ The McCalls also asserted a cause of action for malicious prosecution based upon the Nueces County suit, alleging the suit was brought and continued by appellees without probable cause and for purposes of intimidation and coercion as mentioned previously. As a result of the litigation, the McCalls alleged, they lost time from their law practice and "sustained severe mental anguish, anger, fear, distress, sleepless nights and other injuries."

■ In order to recover on their malicious-prosecution claim, the McCalls were required to establish the following elements: (1) the institution or continuation of civil proceedings against them, (2) by or at appellees' insistence, (3) malice in the commencement of the proceeding, (4) lack of probable cause for the proceeding, (5) termination of the proceeding in the McCalls' favor, and (6) special damages. *See Texas Beef Cattle Co.,* 921 S.W.2d at 207. Appellees moved for summary judgment on grounds that the McCalls could not as a matter of law establish the favorable termination required by element five and had not pled the special injuries necessary for proof of the special damages required by element six.

The trial court evidently sustained appellees' position that abatement of the Nueces County suit is not a termination favorable to the McCalls, as a matter of law; and, appellees point out, Tana Oil and Gas Corporation took a non-suit as to Tom McCall and Rowling took a non-suit as to

both McCalls, precluding as a matter of law any judicial determination on the merits in favor of the McCalls. *See KT Bolt Mfg. Co. v. Texas Elec. Coops., Inc.,* 837 S.W.2d 273, 275 (Tex.App.—Beaumont 1992, writ denied).

■ We agree that absent a final judgment in the abated Nueces County suit, there is no termination of that litigation, much less a termination favorable to the McCalls. This is implicit in the proposition that while a judgment in the underlying suit is on appeal, there can be no termination in favor of the plaintiff who brings a malicious-prosecution action. *See Texas Beef Cattle Co.,* 921 S.W.2d at 208. On the other hand, the voluntary non-suits taken by appellees might satisfy the favorable-termination element depending upon the circumstances attending the non-suits. *See* Restatement (Second) of Torts § 674(b) cmt. j (1977); *see generally* Vitauts M. Gulbis, Annotation, *Nature of Termination of Civil Action Required to Satisfy Element of Favorable Termination to Support Action for Malicious Prosecution,* 30 A.L.R.4th 572, 1984 WL 263428 (2001). Consequently, we do not interpret *KT Bolt Manufacturing* as standing for an iron-clad rule that a favorable termination may never, as a matter of law, arise from a voluntary non-suit taken by the plaintiff in the underlying civil suit upon which a claim for malicious prosecution is founded.[6] *See James v. Brown,* 637 S.W.2d 914, 918–19 (Tex.1982); *Sullivan v. O'Brien,* 85 S.W.2d 1106, 1115 (Tex.Civ.App.—San Antonio 1935, writ ref'd); *Davidson v. First State Bank,* 310 S.W.2d 678, 681 (Tex.Civ. App.—El Paso 1958, no writ).

We need not pursue further the question of favorable termination, however, because we believe appellees' position relative to the special-damage requirement of element six is well taken.

■ Section 904 of the Restatement (Second) of Torts provides as follows:

(1) "General damages" are compensatory damages for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated and hence need not be alleged in order to be proved.

(2) "Special damages" are compensatory damages for a harm other than one for which general damages are given.

Restatement (Second) of Torts § 904 (1977).[7]

---

**6.** Section 674 of the Restatement (Second) of Torts was apparently incorporated into our jurisprudence by the supreme court decision in *Texas Beef Cattle Co. See Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 208 (Tex.1996) (referring specifically to comment j of that section, dealing with the favorable-termination requirement). The comment states that a withdrawal or abandonment of the plaintiff's claim in the underlying *civil* suit may amount to a favorable termination depending upon the circumstances; and, in that connection sections 660, 661, and 665, discussing the same element in connection with an underlying *criminal* proceeding, are pertinent. Restatement (Second) of Torts § 674 cmt. j (1977).

**7.** The special-damages requirement of *Texas Beef Cattle Company* is *not* an element required by the Restatement provisions dealing with the "Wrongful Use of Civil Proceedings," the Restatement term for a malicious-prosecution action founded upon an underlying civil action. *See* Restatement (Second) of Torts § 674 (1977). The special-damages requirement is common in other jurisdictions, however, and is discussed ably and at length in an appendix attached to the court's opinion in *Engel v. CBS, Inc.,* 182 F.3d 124 (2d Cir. 1999). The appendix consists of the opinion of the New York Court of Appeals issued in answer to a certified question in a case much like the present case.

In *Texas Beef Cattle*, the supreme court fixed the meaning of the special-damages requirement as follows:

> It is insufficient that a party has suffered the ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees.... There must be some *physical* interference with a party's person or property in the form of an *arrest, attachment, injunction, or sequestration.*

*Texas Beef Cattle Co.*, 921 S.W.2d at 208–09 (citations omitted, emphasis added). It does not appear that the emphasized items are stated as examples; it appears rather that they are stated by way of limiting the grounds upon which special damages may be claimed. While the McCalls' petition avers that the Nueces County lawsuit actually made more difficult their representation of Niemeyer in the Fayette County litigation, the petition does not claim the McCalls or their property were subjected to arrest, attachment, injunction, or sequestration as required by *Texas Beef Cattle*. Consequently, the McCalls could not prove the special damages required for a cause of action for malicious prosecution.

For the foregoing reasons, we overrule the McCalls' point of error that the trial court erred in its judgment that the McCalls take nothing by their action for malicious prosecution.

We reverse the judgment below insofar as it orders that the McCalls take nothing by their claim for tortious interference with contract and remand that claim to the trial court for proceedings not inconsistent with our opinion. *See* Tex.R.App.P. 44.1(b). We affirm the balance of the judgment. All trial-court costs were taxed against the McCalls. We believe it just, therefore, to assess all appellate costs against appellees. *See* Tex.R.App. P. 43.4, 43.6.