**G.R.A.V.I.T.Y. ENTERPRISES, INC., Appellant,**

v.

**REECE SUPPLY COMPANY, Appellee.**

No. 05–04–00637–CV.

Court of Appeals of Texas, Dallas.

Aug. 9, 2005.

Rehearing Overruled Dec. 13, 2005.

---

Craig P. Henderson, William W. Wolf, P.C., Dallas, for appellant.

Carlyle H. Chapman, Thomas F. Loose and Wendy Lorraine Howza, Locke Lidell & Sapp LLP, Dallas, for appellee.

Before Justices WHITTINGTON, FITZGERALD, and RICHTER.

## OPINION

Opinion by Justice FITZGERALD.

G.R.A.V.I.T.Y. Enterprises, Inc. (Gravity) appeals the judgment for $217,142.50 for attorney's fees rendered against it in favor of Reece Supply Co. in this breach of contract action. Gravity brings nine issues asserting the trial court erred in rendering a take-nothing judgment on its claims against Reece and in awarding Reece its attorney's fees. We conclude the trial court erred in awarding Reece attorney's

fees, render judgment that Reece take nothing against Gravity, and otherwise affirm the trial court's judgment.

## BACKGROUND

Gravity is a commercial sign manufacturer, and Reece is a supplier to sign manufacturers. In 1997, Gravity received an order for about 2700 neon signs to advertise the customer's products. Most of these signs needed to have adjustable brightness, that is, be "dimmable," through a knob on the sign's transformer. Gravity required the transformers not cost more than $40 each. In October 1997, Gravity contacted Reece about obtaining the transformers, and Reece contacted Lighting Components.

Tom Hull, the president of Lighting Components, went to Gravity's manufacturing plant, saw the signs, and spoke with Gravity's employees. Hull explained to Reece and Gravity that Lighting Components did not make a dimmable transformer, but given the size of the order, it could design one based on its nondimmable transformer. According to Gravity, the representation was made that Lighting Components had previously manufactured the dimmable transformer and so would not have to design a new one. Hull determined Lighting Components could sell the transformers to Reece for about $32, and Reece agreed to sell them to Gravity for $36.69, well within Gravity's $40 price break.

Due to its history with Gravity, Reece required Gravity obtain a letter of guaranty from a bank securing payment for the transformers. When Gravity obtained the letter of guaranty, Reece placed the order for the dimmable transformers with Lighting Components.

Gravity received a shipment of 50 of the dimmable transformers in March 1998 and another shipment of 2200 dimmable transformers in May 1998. In March, when it hooked up ten of the transformers to the neon tubing for the signs, six of the transformers shut down, and four of them ran hot. Testimony about how hot the transformers were varied from "a little warm" to hot enough to burn a person touching them. Gravity contacted Reece, who contacted Lighting Components. Hull explained that Lighting Components' transformers ran warmer than other manufacturers' transformers because they were designed to dissipate heat into the surrounding air through their aluminum cases. This heat-dissipation feature protected the internal components of the transformers and allowed Lighting Components to give a longer warranty on the transformers.

In May 1998, after the delivery of the 2200 transformers, various Reece employees visited Gravity's facility to work on the problem of the transformers shutting down. According to Gravity's witnesses, none of Reece's employees were able to solve the problem. According to Reece's witnesses, Dan Blair, Reece's sales manager with over twenty years' experience in signs and neon signs, went to Gravity's plant and examined one of the signs. Blair testified the transformer worked when the "lid" was open but shut down when it was closed. Blair determined the problem was that the GTO cable, a high-voltage cable connecting the transformer to the neon tubing, was touching the neon tubing and the transformer when the lid was closed but was pulled free of them when the lid was open. The touching of the GTO cable to the neon tubing and the transformer caused the transformer to overload and shut down. Blair recommended putting sleeving on the GTO cable and using tube supports to keep the GTO cable away from the neon tubing and transformer. Blair used them on one of

the signs, and when the lid was closed, the transformer did not shut down.

The terms of the agreement called for Gravity to pay Reece within seven days after shipping; however, Gravity did not pay Reece. On May 25, 1998, Gravity wrote the bank, informing it that the transformers "are a potential fire hazard" and that it had refused payment.

In 1999, Reece turned over collection of the debt to its attorneys. Gravity declared bankruptcy in November 1999. Reece then demanded payment from the bank under the letter of guaranty, but the bank refused. Reece sued the bank and recovered a summary judgment for the amount owing for the transformers plus interest, costs, and Reece's attorney's fees. The defective condition, if any, of the transformers was not litigated. Following exhaustion of appeals, the bank paid the judgment. The bank then debited Gravity's account for the amount of the judgment plus the bank's attorney's fees.

In this suit, Gravity sued Reece for the amount the bank debited its account plus its attorney's fees, asserting breach of warranty, breach of contract, violation of the Deceptive Trade Practices Act, and fraud. Reece counterclaimed for breach of contract and requested the fees and costs it incurred in defending against Gravity's suit. The jury found Gravity breached the contract and that Reece was not liable under any of the causes of action. The trial court entered judgment denying all relief sought by Gravity and awarding Reece its attorney's fees of $217,142.50.

## AMENDED PETITION

■ In its second issue, Gravity asserts the trial court erred in striking its second amended petition filed November 21, 2003, ten days before trial. The trial court must allow the parties to amend their pleadings up to the deadline for amending pleadings. TEX.R. CIV. P. 63. Even after the time for filing amended pleadings has past, the trial court abuses its discretion in denying leave to file an amended pleading unless (1) the party opposing the amendment presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *State Bar v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994); *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990); *Graham v. Adesa Tex., Inc.*, 145 S.W.3d 769, 775 (Tex.App.-Dallas 2004, pet. filed). In these two situations, the decision to allow or deny the amendment rests with the sound discretion of the trial court, and the trial court's decision will not be overturned unless it constitutes a clear abuse of discretion. *Kilpatrick*, 874 S.W.2d at 658. In this case, Gravity does not dispute that its second amended petition asserted several new defenses and thus was prejudicial on its face; instead, Gravity argues it timely filed its second amended petition.

■ The deadline for filing amended pleadings was set by the trial court's scheduling order. The trial court's enforcement of a scheduling order is reviewed for abuse of discretion. *See Wil–Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 401 (Tex.App.-El Paso 2004, no pet.); *see also Clanton v. Clark*, 639 S.W.2d 929 (Tex.1982) (trial court has discretion to manage its docket). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules and principles. *Adams v. First Nat'l Bank*, 154 S.W.3d 859, 876 (Tex.App.-Dallas 2005, no pet.).

Rule of civil procedure 63 permits a party to file amended pleadings without

leave of court up to seven days before trial. This case went to trial on December 1, 2003; thus, Gravity's second amended petition filed ten days before trial met this seven-day deadline. However, the seven-day deadline does not apply when the trial court has entered a scheduling order pursuant to rule 166 setting a different deadline. Tex.R. Civ. P. 63.

In this case, the trial court entered a scheduling order pursuant to rule 166 and required all amended pleadings asserting new causes of action or defenses be filed no later than thirty days before the end of the discovery period.[1] See Tex.R. Civ. P. 166. The scheduling order did not expressly set out the dates of the discovery period but stated discovery would be controlled by rule of civil procedure 190.3. Under rule of civil procedure 190.3(b)(1)(B)(i), the discovery period ends "30 days before the date set for trial." Tex.R. Civ. P. 190.3(b)(1)(B)(i). In the scheduling order, the case was set for trial on May 19, 2003.[2] Thus, under rule 190.3 and the scheduling order, the discovery deadline was April 21, 2003 (April 19, 2003 was a Saturday, see Tex.R. Civ. P. 4), and the deadline for amending pleadings asserting new causes or defenses was March 24, 2003 (March 22, 2003 was a Saturday). Gravity's November 21, 2003 second amended petition failed to meet the scheduling order's March 24, 2003 deadline.

Gravity argues the scheduling order's tying of the deadline for amending pleadings to the discovery deadline should not be followed because "neither the trial court nor Reece uniformly or fairly enforced or interpreted" the discovery deadline in the scheduling order. Gravity cites to motions filed by Reece containing inconsistent arguments concerning what date constituted the end of the discovery period, but Gravity does not cite to any action of the trial court that was inconsistent with the discovery deadline.

Gravity also argues the April 21, 2003 discovery deadline should not be enforced by the trial court because the parties did not follow it, citing a letter from Reece's attorneys stating they would turn over the transformers to Gravity's attorneys for testing on November 19, 2003. This letter shows only that the parties voluntarily continued discovery after the discovery period; it does not show inconsistency by the trial court in enforcing the scheduling order. Gravity does not explain and cites no authority showing how the trial court's enforcement of an order disregarded by the parties constitutes an abuse of discretion by the trial court. We conclude Gravity has not adequately briefed this argument. See Tex.R.App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions

---

1. The amended pleadings portion of the scheduling order stated,

   Any amended pleadings asserting new causes of action or affirmative defenses must be filed no later than thirty (30) days before the end of the discovery period and any other amended pleadings must be filed no later than seven days after the end of the discovery period. Amended pleadings responsive to timely filed pleadings under this schedule may be filed after the deadline for amended pleadings if filed within two (2) weeks after the pleading to which they respond.

2. The trial court reset the trial date several times with the final trial setting for December 1, 2003. However, these resettings did not affect the discovery period or the deadline for amending pleadings because the order also provided, "Reset or continuance of the Initial Trial Setting [May 19, 2003] will not alter any deadlines established in this Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order." In this case, the record does not show the trial court entered any order altering the discovery period or the deadline for filing amended pleadings.

made, with appropriate citations to authorities and to the record"); *Johnson v. Structured Asset Servs.*, 148 S.W.3d 711, 725 (Tex.App.-Dallas 2004, no pet.).

■ Gravity also argues that the striking of its second amended petition filed ten days before trial is fundamentally unfair because the trial court allowed Reece to file its seconded amended answer and counterclaim the day of trial. Gravity, however, did not move to strike Reece's amended pleading, and the order granting leave to file the pleading states Gravity had advised the court it had no objection to the filing of the pleading. Accordingly, any unfairness from the trial court allowing the late filing of Reece's trial amendment was expressly waived by Gravity. Gravity also cites no authority in support of the proposition that the trial court acted unfairly, so this argument is not properly briefed. Tex.R.App. P. 38.1(h).

Gravity's second amended petition was untimely under the scheduling order, it was facially prejudicial because it asserted new affirmative defenses, and it was objected to by Reece. Accordingly, the decision whether to strike the amended petition was in the sound discretion of the trial court. *Kilpatrick*, 874 S.W.2d at 658. We conclude the trial court did not abuse its discretion in granting Reece's motion to strike Gravity's second amended petition. We overrule Gravity's second issue.

### LIMITATIONS

■ In its third issue, Gravity contends the trial court erred in entering judgment for Reece because Reece's claim was barred by limitations. Issues are waived if an appellant fails to support his contention by citations to appropriate authority, or cites only a single non-controlling case. *Adams*, 154 S.W.3d at 872. Gravity cites no authority in support of this issue, not even the relevant statute of

limitations. Accordingly, it has waived this issue. Tex.R.App. P. 38.1(h); *Johnson*, 148 S.W.3d at 725.

Gravity has also waived its defense. Limitations is an affirmative defense that is waived if not pleaded. *Sandford v. Sandford*, 732 S.W.2d 449, 450 (Tex.App.-Dallas 1987, no writ); *see* Tex.R. Civ. P. 94 (listing statute of limitations as an affirmative defense a party "shall set forth affirmatively"). Due to the striking of its second amended petition, it had no pleading asserting the affirmative defense of limitations. Accordingly, this defense is waived. We overrule Gravity's third issue.

### PAYMENT

■ In its fifth and sixth issues, Gravity asserts it paid for the first 50 transformers, but that Reece obtained judgment against the bank for those transformers and the bank debited Gravity's account for them. Thus, Gravity argues, the trial court should have entered judgment for Gravity for the amount of the first fifty transformers, $1834.50, plus Gravity's attorney's fees. Gravity cites no authority in support of these issues, and its inadequate briefing has waived them. Tex.R.App. P. 38.1(h); *Johnson*, 148 S.W.3d at 725.

Furthermore, Gravity pleaded no such cause of action, nor did it obtain a jury question on this issue. Accordingly, it has waived this theory of recovery. *See Stern v. Wonzer*, 846 S.W.2d 939, 945 (Tex.App.-Houston [1st Dist.] 1993, no writ). We overrule Gravity's fifth and sixth issues.

### LEGAL AND FACTUAL SUFFICIENCY

■ In its seventh issue, Gravity asserts it proved as a matter of law that Reece failed to comply with a warranty; in its eighth issue, Gravity asserts the jury's finding that Reece did not fail to comply

with a warranty is against the great weight and preponderance of the evidence. Gravity cites no authority in support of these issues. Accordingly, it has waived them. TEX.R.APP. P. 38.1(h); *Johnson,* 148 S.W.3d at 725.

■ However, even if we consider Gravity's arguments, we conclude they lack merit. In determining the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998); *see City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *see City of Keller,* 168 S.W.3d at 813–14. More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994)). In determining the factual sufficiency of the evidence, we consider and weigh all the evidence. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

Gravity first asserts Reece failed to comply with a warranty by making "numerous affirmations of fact or promises relating to the transformers, which in fact were not true or were not kept." Gravity, however, fails to specify which "affirmations of fact or promises relating to the transformers" were false or not kept. Without this information, we cannot review this argument. Gravity's briefing of this assertion fails to provide "a clear and con-

cise argument for the contention[ ] made" as required by rule of appellate procedure 38.1(h), and we conclude Gravity's inadequate briefing has waived this assertion. TEX.R.APP. P. 38.1(h); *Natural Gas Clearinghouse v. Midgard Energy Co.,* 113 S.W.3d 400, 416 (Tex.App.-Amarillo 2003, pet. denied).

Gravity next asserts Reece failed to comply with the warranty of fitness for a particular purpose and the warranty that the transformers were fit for their ordinary purpose. Gravity argues it relied on Reece's expertise in choosing transformers, and that Reece's choosing transformers that vent their heat to the ambient air was inappropriate for the design of Gravity's signs because they ran too hot and would melt the plastic components of the sign. Gravity also argued that the high temperature at which the transformers operated made them unsafe and unfit for their ordinary purpose. The evidence was disputed as to how hot the transformers ran. The jury could conclude that Gravity's testimony about the high temperature of the transformers concerned events before Blair showed Gravity how to avoid overloading the transformer. Gravity presented no evidence of signs melting from the heat of the transformers. Jeff Pierce, an employee of both Gravity and Reece at different times, testified that signs using the dimmable transformers did not run too hot. Pierce testified that shortly before the trial, he went to two locations having the signs at issue with Lighting Components' dimmable transformers, and those signs were still safely and properly operating. When he touched the transformers, they were warm but not hot enough to burn him. We conclude Gravity did not prove as a matter of law that Reece failed to comply with the warranty, and the jury's failure to find Reece did not comply with the warranty was not against the

great weight and preponderance of the evidence. We overrule Gravity's seventh and eighth issues.

## GOOD FAITH INSTRUCTION

■ In its ninth issue, Gravity asserts "[t]he trial court erred in refusing to submit good faith instruction/question as requested by Gravity." As Reece noted in its brief, Gravity requested submission of a good faith instruction on jury question 1; Gravity did not request submission of a jury question on good faith. Jury question 1 asked, "Did Reece Supply fail to comply with the Agreement?"

■ The rules of appellate procedure state, "The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(h). Gravity's briefing on this issue is inadequate. It states in its brief that it pleaded the cause of action of lack of good faith under the UCC and that it "demonstrated at trial Reece's lack of good faith in dealing with Gravity and its problems with the transformers." Gravity makes no citation to the record to where it demonstrated Reece's lack of good faith or any description of the evidence of Reece's lack of good faith. This Court has no duty to search through the record without guidance from Gravity to determine whether its assertion of reversible error is valid. *See Barnett v. N. Tex. Court, Ltd.*, 123 S.W.3d 804, 817 (Tex.App.-Dallas 2003, pet. denied); *Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Gravity's briefing on this issue also includes no argument of why the instruction was necessary to support its cause of action for breach of the agreement, nor any argument of how the instruction's absence harmed Gravity. This Court is not responsible for making Gravi-

ty's arguments for it. *See Favaloro v. Comm'n for Lawyer Discipline*, 13 S.W.3d 831, 839 (Tex.App.-Dallas 2000, no pet.). We conclude this issue is waived for inadequate briefing. We overrule Gravity's ninth issue.

## REECE'S ATTORNEY'S FEES

■ In its fourth issue, Gravity contends the trial court erred in awarding Reece its attorney's fees because Reece neither sought nor recovered any damages from Gravity on its counterclaim. We review the trial court's decision to award attorney's fees de novo. *Gereb v. Smith–Jaye*, 70 S.W.3d 272, 273 (Tex.App.-San Antonio 2002, no pet.).

In its counterclaim, Reece pleaded Gravity breached the contract. Reece then pleaded its damages as follows: "As a result of Gravity's breach, Reece Supply has incurred actual damages of reasonable and necessary attorneys' fees and costs of litigation in defending this suit. Pursuant to Section 38.001, *et seq.* of the Texas Civil Practice and Remedies Code, Reece Supply is entitled to recover these attorneys' fees and costs." Reece never counterclaimed for any damages other than its attorney's fees for defending against Gravity's suit. Thus, the sole basis for its claim for attorney's fees under section 38.001 was for successfully defending against Gravity's breach of contract claim.

■ Ordinarily, attorney's fees cannot be recovered as damages. *Qwest Commc'ns Int'l, Inc. v. A T & T Corp.*, 114 S.W.3d 15, 32–33 (Tex.App.-Austin 2003), *rev'd in part on other grounds*, 167 S.W.3d 324 (Tex.2005) (per curiam). The Austin court, in *Qwest Communications*, concluded there are two exceptions to this general rule. The first exception applies "where the defendant's tort requires the plaintiff to act in the protection of his interests by bringing or defending an action against a

third party, the plaintiff 'is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred.'" *Id.* at 33 (quoting *McCall v. Tana Oil & Gas Corp.*, 82 S.W.3d 337, 344 (Tex.App.-Austin 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 914(2) (1977)), *rev'd on other grounds*, 104 S.W.3d 80 (Tex.2003)). This exception does not apply because, although Reece had to bring suit against a third party, the bank, Reece was awarded judgment for its costs and attorney's fees, and the bank paid the judgment. The second exception listed by the Austin court "permits recovery of damages measured by attorney's fees when the defendant 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *McCall*, 82 S.W.3d at 345 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975))). However, the supreme court's opinion reversing *McCall* indicates that recovery of attorney's fees for these reasons should be pursued under rule of civil procedure 13, not as actual damages. *See Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 83 (Tex.2003). Regardless, Reece did not seek attorney's fees on this ground, and it did not plead or

prove Gravity acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Accordingly, we conclude Reece is not entitled to attorney's fees as damages.

■ Other than the exceptions noted above, a party cannot recover attorney's fees unless permitted by statute or contract. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex.1999). A party who prevails on a breach of contract claim is entitled to recover attorney's fees for prosecution of the claim as provided by section 38.001(8) of the civil practice and remedies code: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: ... (8) an oral or written contract." TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997).

Recovery of damages on a claim has always been an element of a recovery of attorney's fees under section 38.001 and its predecessor statutes, articles 2178 and 2226 of the revised civil statutes. In 1909, the legislature passed article 2178, which, for claims now listed in section 38.001(1)-(6),[3] provided for reasonable attorney's fees[4] if the plaintiff presented his claim to

3. Under the earlier versions of the statute, i.e., before 1977, a party could not recover attorney's fees on a claim for breach of contract unless the contract concerned one of the listed claims: personal services rendered, labor done, material furnished, overcharges for freight or express, lost or damaged freight or express, or stock killed or injured, and, after the 1953 amendment, suits on sworn accounts. The supreme court limited the suit on sworn accounts provision to suits between persons for the purchase and sale of personal property creating a debtor-creditor relationship. *Meaders v. Biskamp*, 159 Tex. 79, 82–83, 316 S.W.2d 75, 78 (1958). Claims on "special contracts," not falling within this definition of sworn account, were not entitled to attorney's fees until the 1977 amendments. *See id.*, 159 Tex. at 83, 316 S.W.2d at 78

(attorney's fees not recoverable under article 2226 for contract to drill oil well); *Guay v. Schneider, Bernet & Hickman, Inc.*, 341 S.W.2d 461, 462 (Tex.Civ.App.-Waco 1960) (attorney's fees not recoverable in suit by stock broker against account holder for amounts owing from margin transaction), *writ ref'd n.r.e.*, 161 Tex. 560, 344 S.W.2d 429 (1961) (per curiam).

4. Between 1909 and 1949, articles 2178 and 2226 limited the "reasonable amount as attorney's fees" to twenty dollars. The 1949 amendment to article 2226 removed this cap. *Compare* Act approved Mar. 13, 1909, 31st Leg., R.S., ch. 47, § 1, 1909 Tex. Gen. Laws 93, 93–94 *and* Act approved Mar. 26, 1923, 38th Leg., R.S., ch. 144, § 1, 1923 Tex. Gen. Laws 312, 312 *with* Act of June 21, 1949, 51st

the alleged debtor and did "finally establish his claim, and obtain judgment for the full amount thereof, as presented for payment." Act approved Mar. 13, 1909, 31st Leg., R.S., ch. 47, § 1, 1909 Tex. Gen. Laws 93, 93–94. In 1923, article 2178 was renumbered to article 2226, but its terms remained substantively unchanged, continuing to require the plaintiff to "obtain judgment for the full amount thereof." Act approved Mar. 26, 1923, 38th Leg., R.S., ch. 144, § 1, 1923 Tex. Gen. Laws 312, 312. In 1949, the legislature amended the requirement of obtaining "judgment for the full amount thereof" to obtaining "judgment for any amount thereof." Act of June 21, 1949, 51st Leg., R.S., ch. 494, § 1, 1949 Tex. Gen. Laws 915, 915. The 1977 amendment added "suits founded on oral or written contracts" to the list of claims entitling a party to attorney's fees. The 1977 amendment removed the language requiring "judgment for any amount thereof." Act of Apr. 7, 1977, 65th Leg., R.S., ch. 76, § 1, 1977 Tex. Gen. Laws 153, 153. The amended act stated, as had the earlier versions, that the claimant had to present his claim to the alleged debtor, and if the claim "for the just amount owing" was not tendered within thirty days, "the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees." *Id.* The supreme court interpreted this change in article 2226 to mean that a claimant did not need to have a net recovery to be entitled to attorney's fees; instead, he had to prove "the just amount owing." *McKinley v. Drozd,* 685 S.W.2d 7, 10–11 (Tex.1985) (even though claimant's breach-of-contract recovery was entirely offset by opponent's counterclaims, claimant was entitled to attorney's fees under article 2226).

In 1985, the statute was codified into its present form. Section 38.002 requires presentation of the claim and the failure of the opposing party to tender "payment for the just amount owed." TEX. CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 1997). If the prerequisites of section 38.002 are met, and the claim is one for which attorney's fees may be awarded, then the claimant "may recover reasonable attorney's fees ... in addition to the *amount* of a valid claim and costs." *Id.* § 38.001 (emphasis added). The language of the statute requires that the claimant must recover an "amount of a valid claim."

As the supreme court has made clear, section 38.001 requires recovery of damages for a claimant to be eligible to recover attorney's fees. In 1995, and again in 1997, the supreme court stated that for a party to recover attorney's fees under section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997) (quoting *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 437 (Tex.1995)); *see also Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195 (Tex.2004) (per curiam) ("it was not entitled to recover attorney's fees because it was not awarded damages on its breach of contract claim"); *Rodgers v. RAB Inv., Ltd.,* 816 S.W.2d 543, 551 (Tex.App.-Dallas 1991, no writ) ("Without a jury finding of damages or a recovery of money, there can be no award of attorney's fees."). Section 38.001 does not provide for attorney's fees for a party's successful defense against a claim. *Wilson & Wilson Tax Servs. v. Mohammed,* 131 S.W.3d 231, 240 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Melson v. Stemma Exploration & Prod. Co.,* 801

Leg., R.S., ch. 494, § 1, 1949 Tex. Gen. Laws 915, 915.

S.W.2d 601, 604 (Tex.App.-Dallas 1990, no writ).

Reece argues, however, that a party can recover its attorney's fees under section 38.001 even though it did not recover damages. In its brief, Reece discusses three cases in which the courts of appeals held that parties could recover attorney's fees under section 38.001 even though they were awarded no damages. *See Atlantic Richfield Co. v. Long Trusts,* 860 S.W.2d 439 (Tex.App.-Texarkana 1993, writ denied); *De La Rosa v. Kaples,* 812 S.W.2d 432 (Tex.App.-San Antonio 1991, writ denied); *Martini v. Tatum,* 776 S.W.2d 666 (Tex.App.-Amarillo 1989, writ denied).

In *Atlantic Richfield Co.,* ARCO was the operator of gas wells for the Trusts. *Atlantic Richfield Co.,* 860 S.W.2d at 442. The operating agreement required the Trusts to contribute to the operating expenses. The agreement provided for payment of attorney's fees in the event of untimely non-payment. The Trusts breached this agreement, ARCO sued the Trusts for breach of the operating agreement, and the Trusts sued ARCO, claiming in part they were overcharged. *Id.* at 450. While suit was pending, ARCO mitigated its damages by recouping some of the unpaid operating expenses by selling some of the Trusts' share of the gas. *Id.* At trial, the jury found the Trusts breached the operating agreement by failing to pay ARCO in accordance with the agreements, but the jury awarded ARCO "zero" damages. On appeal, ARCO complained the trial court erred by failing to disregard the jury finding of zero damages and by failing to award ARCO its attorney's fees. *Id.* at 442, 449.

Reliance upon the *Atlantic Richfield* decision is problematic. ARCO's point of error on appeal challenging the jury's zero damages finding actually focused on its entitlement to attorney's fees, not its enti-

tlement to damages. *Id.* at 450 n. 14. Even ARCO's motion to disregard and his later argument on appeal that the trial court erred in failing to disregard the jury finding of zero damages was not availing. *Id.* If the jury finding had been set aside, no finding on damages would have remained, and ARCO would have had to take the untenable position that its damages were established as a matter of law. *Id.* Applying the principle that "[w]hen a party prevails and establishes a valid claim, the party can be entitled to attorney's fees without achieving a monetary recovery on the claim itself," the court held ARCO was entitled to attorney's fees based upon the litigation of the portion of the suit dealing with drilling costs. *Id.* at 450.

*Martini* concerned a dispute between a buyer and a seller of real property to earnest money held in escrow after the buyer failed to close timely. *Martini,* 776 S.W.2d at 667–68. The seller refused to release the earnest money to the buyer, and they sued each other for a variety of claims including breach of contract. *Id.* at 668. After suit was filed, but before trial, the seller agreed to release the earnest money to the buyer in partial settlement of the buyer's claim for interest on the earnest money. *Id.* at 668, 670. At trial, the jury found the buyer breached the earnest money contract and the seller did not breach the contract, and the jury determined the amount of the seller's reasonable and necessary attorney's fees. *Id.* at 668.

Although substantial evidence showed the seller was damaged by the buyer's breach of contract, no issue inquiring of the seller's actual damages was submitted to the jury. The parties, however, agreed that the answer to special issue number 3 (wherein the jury affirmatively found the buyer breached his earnest money contract with the seller) constituted a correct

submission of seller's claim to the five thousand dollars earnest money, and the jury's answer as a finding of the seller's valid claim to the funds. The court concluded the seller established a valid claim under section 38.001 and was entitled to recover reasonable attorney's fees, although the seller "did not achieve a monetary recovery on the claim itself." *Id.* at 670.

In *De La Rosa*, the buyers of real property paid the seller a down payment of $15,000 and took possession of the property pursuant to the agreement. *De La Rosa*, 812 S.W.2d at 433. The buyers soon changed their minds, returned the property, and demanded the return of the $15,000 down payment. *Id.* The seller refused to return the down payment. The buyers sued for breach of oral contract claiming the $15,000 down payment, or, alternatively, for rescission of contract. *Id.* The seller responded with a general denial, and a claim for damages for breach of the same contract, for groundless suit brought in bad faith, and for attorney's fees both for defending and prosecuting the claim under the contract. *Id.* The buyers (appellants) failed to present a statement of facts on appeal. *Id.* The jury found the contract did not entitle the buyers to the return of the down payment if they were dissatisfied with the purchase, the seller suffered no damages from the buyers' failure to purchase the property, and the seller's reasonable and necessary attorney's fees were $4000. *Id.* On appeal, the buyers argued the seller did not prevail on a valid or just claim and therefore was not entitled to attorney's fees under section 38.001 because the jury found that the seller suffered no damages from the buyers' breach. *Id.* at 434. The court of appeals, however, concluded the seller had prevailed because "the jury implicitly sustained the claim of the [seller] to the $15,000 by its answers." *Id.* at 435. Thus,

the seller prevailed and was entitled to attorney's fees because the jury found the seller was entitled to property it claimed in its breach of contract suit. *Id.*

After the courts of appeals decided these cases, the Texas Supreme Court issued cases holding that a party who does not recover damages cannot recover attorney's fees under section 38.001(8). In *Green International, Inc.*, the jury found the defendant breached the contract, but it awarded the plaintiff no damages. *Green Int'l, Inc.*, 951 S.W.2d at 386. In the supreme court, the plaintiff argued it was entitled to attorney's fees because the jury found in its favor on its breach of contract claim. *Id.* at 390. The supreme court held that even though the jury found the defendant breached the contract, the plaintiff could not recover attorney's fees under section 38.001(8) because it "failed to recover damages on its breach of contract claim." *Id.*

In *Mustang Pipeline Co.*, Mustang hired Driver to build a section of a pipeline. *Mustang Pipeline Co.*, 134 S.W.3d at 196. When Driver breached the contract, Mustang terminated Driver and had to hire another company to complete Driver's portion of the pipeline. *Id.* at 197. Mustang sued Driver for breach of contract and alleged as damages the cost of completion and lost profits, and Mustang sought its attorney's fees. The jury found Driver breached the contract, and it awarded Mustang over $2 million in damages for Driver's breach of contract. *Id.* On Driver's motion for judgment notwithstanding the verdict, the trial court set aside the award of damages, and it did not award Mustang attorney's fees. *Id.* The trial court denied Driver's motion to set aside the jury finding that Driver breached the contract. *Id.* The supreme court determined the trial court was correct to set aside the damages award because Mustang

failed to provide evidence that its out-of-pocket costs were reasonable. *Id.* at 201. On the question of Mustang's right to recover attorney's fees under section 38.001, the court stated, "While Mustang did have a valid claim against Driver, it was not entitled to recover attorney's fees because it was not awarded damages on its breach of contract claim." *Id.* Like the parties in the cases cited by Reece, Mustang proved Driver breached the contract. However, the supreme court held that because there was no award of damages, Mustang could not recover its attorney's fees.

To the extent *Atlantic Richfield Co., Martini,* and *De La Rosa* are inconsistent with the supreme court's pronouncements in *Mustang Pipeline Co.* and *Green International, Inc.,* we decline to follow them. Following the supreme court's opinions in *Mustang Pipeline Co.* and *Green International, Inc.,* we conclude the trial court erred in determining Reece was entitled to attorney's fees under section 38.001.

Reece also argues it is entitled to attorney's fees for defending against Gravity's breach of contract action based on the following language from *De La Rosa:*

"[T]here is an exception to the general rule of law [that attorney's fees are not recoverable for the defense of a breach-of-contract-claim] for cases in which the matters encompassed by the claim and counterclaim are indistinguishable, where they arose from the same transactions, where the same facts required to prosecute the claim are required to defend against the counterclaim"; under these circumstances attorney's fees are appropriate.

*De La Rosa,* 812 S.W.2d at 434 (quoting *Veale v. Rose,* 657 S.W.2d 834, 841 (Tex. App.-Corpus Christi 1983, writ ref'd n.r.e.)). The quoted language must be considered within the context of its source, *Veale.* In *Veale,* plaintiffs and defendants sued one another for breach of contract arising out of the same facts. *Veale,* 657 S.W.2d at 836. The plaintiffs prevailed on their breach of contract claim, and in proving attorney's fees, did not segregate the fees related to prosecution of their claim from the fees related to defense of the defendants' claim. *Id.* at 841. Defendants argued the attorney's fees award was unlawful because a party cannot recover attorney's fees for the pure defense of a claim. *Id.* The court of appeals set out the above-quoted language and concluded that because the claim and counterclaim were interrelated, segregation was unnecessary and the award of attorney's fees for both prosecution of the claim and defense of the counterclaim was proper. *Id.* Thus, the language on which Reece relies permits recovery of attorney's fees for defense of a claim when (1) a party is entitled to attorney's fees for the prosecution of a claim and (2) the claim and counterclaim are so interrelated that segregation of fees incurred in prosecution of the claim and defense of the counterclaim is not necessary. *Id.* In the case before us, Reece failed to show it was entitled to attorney's fees for prosecution of its claim, so the exception permitting recovery of attorney's fees for defense of an interrelated counterclaim does not apply.

We hold Reece is not entitled to attorney's fees. We sustain Gravity's fourth issue. Because of our disposition of this issue, we need not reach Gravity's first issue asserting Reece lacked standing to bring its breach of contract claim.

We reverse the trial court's judgment in part and render judgment that Reece take nothing in its suit against Gravity, and we otherwise affirm the trial court's judgment.