William D. BEARD, Appellant

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 05–07–00428–CV.

Court of Appeals of Texas, Dallas.

March 17, 2009.

William D. Beard, Dallas, TX, pro se.

Lisa M. Holt, Asst. Disciplinary Counsel, Dallas, Cynthia W. Hamilton, Asst. Disciplinary Counsel, Austin, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

William D. Beard appeals the trial court's judgment ordering appellant disbarred. Appellant brings six issues asserting several jury findings were barred by the statute of limitations, the evidence conclusively established appellant did not commit the alleged misconduct, the evidence is legally and factually insufficient to support the jury's findings, and the trial court erred in submitting supplemental instructions to the jury. We affirm the trial court's judgment.

### BACKGROUND

In 1993, the Duriseau family was riding in a car when it was struck from behind, injuring them. They obtained treatment for their injuries from Dr. Herman Barnes, a chiropractor. Dr. Barnes recommended they contact appellant to bring suit against the driver of the other vehicle. Appellant met with the Duriseaus at their house, and they each signed an agreement authorizing appellant to represent them. Later, appellant contacted the Duriseaus and told them the insurance company for the car that hit them had agreed to settle

the case for about $40,000. On August 26, 1996, appellant went to their house and gave them checks totaling only about $4000, and they signed settlement agreements releasing the other driver and her insurance company. Appellant told the Duriseaus he would negotiate with Dr. Barnes and try to get his fees reduced. The Duriseaus testified appellant never gave them a settlement statement and never accounted to them for the remaining money from the settlement. The Duriseaus thought the remainder of their share of the settlement went to pay Dr. Barnes.

Subsequently, the Duriseaus received letters from Dr. Barnes demanding payment of his fees. After receiving each letter, the Duriseaus contacted appellant, who told them he would take care of it and insisted he would get the fees reduced. After the second time appellant told them he would take care of the amounts due Dr. Barnes, the letters from Dr. Barnes ceased. However, in 2000, Dr. Barnes sued the Duriseaus in small claims court demanding about $5000 for his unpaid fees from each of them. The Duriseaus were upset because they thought appellant had paid Dr. Barnes. They telephoned appellant and told him about Dr. Barnes's lawsuits. Appellant said he would come by and pick up the papers and take care of it. Appellant filed answers for the Duriseaus asserting a general denial and alleging affirmative defenses, including that Dr. Barnes's claims were barred by the statute of limitations. The justice court mailed appellant notice of the trial setting for the cases. Carolyn Duriseau testified appellant did not inform them of the trial setting, but Althea Duriseau testified appellant told her about the trial setting but stated he would represent her and she did not need to appear in court. On December 11, 2000, appellant did not appear at the trial setting, and the justice of the peace entered default judgments against

the Duriseaus for the amounts pleaded by Dr. Barnes.

After receiving notice of the judgments against them, the Duriseaus tried to contact appellant. When they called from their home telephones, appellant would not answer. Only when they called from a different telephone number did appellant answer, and he said he would come by their house; however, he never did. On December 15, 2000, each of the Duriseaus sent appellant a letter stating they did not want him to represent them any more and complaining of his failure to communicate with them. On December 21, 2000, the Duriseaus filed bonds in the justice court to perfect appeals of the default judgments to county court at law. On January 9, 2001, the Duriseaus sent appellant a letter demanding their case files, but appellant never responded to the letter and never turned over the files to them.

The county court at law sent its communications with the Duriseaus to appellant as their attorney and not to the Duriseaus themselves. Appellant did not inform the court that his representation had been terminated by the Duriseaus. Appellant, without the Duriseaus knowledge or authorization, filed motions for summary judgment on their behalf asserting Dr. Barnes's claims were barred by limitations. The trial court scheduled the cases for a hearing on the dismissal docket in May 2002. When Dr. Barnes did not appear, the trial court dismissed his suits against the Duriseaus for want of prosecution. Appellant did not inform the Duriseaus that Dr. Barnes's suits were dismissed.

The Duriseaus filed grievances against appellant on October 15, 2002. At a hearing on the grievances, they learned for the first time that Dr. Barnes's suits against them were dismissed.

Appellant testified that his routine in all personal injury cases that settle was to prepare a settlement statement showing how all the funds were to be disbursed. Appellant said he would first explain the settlement statement with the client, have the client sign the settlement statement, and then have the client sign the check. Appellant testified he did not have documentation that he followed that procedure with the Duriseaus because the mandatory record-retention period had passed.

In response to the questions in the jury charge, the jury found appellant:

1. .... fail[ed] to keep [the Duriseaus] informed about the status of their legal matter and [to] promptly comply with their reasonable requests for information ... [;]

5. .... fail[ed] to provide [the Duriseaus] with a written statement describing the outcome of their matter, the remittance to them and the method of its determination upon the conclusion of their contingent fee matter ... [;]

9. .... fail[ed] to keep and preserve complete records relating to [the Duriseaus'] settlement funds for a period of five years after termination of the representation ... [;]

13. .... [did not] fail to promptly notify Dr. Herman Barnes that [appellant] received funds ... in which Dr. Barnes might had [sic] an interest ... [;]

17. .... fail[ed] to promptly deliver to Dr. Herman Barnes the funds to which he was entitled ... [;]

21. .... fail[ed] to promptly render a full accounting to [the Duriseaus] regarding their settlement funds upon request ... [;]

25. .... [did not] fail to withdraw from the representation of [the Duriseaus] when discharged ... [; and]

26. .... fail[ed] to surrender client files to [the Duriseaus] upon termination of the representation. ...

The trial court then held a hearing on the appropriate discipline to impose. After considering all the evidence, including the three previous findings of professional misconduct, the court found "that the proper discipline of the Respondent for each occurrence of professional misconduct is **DISBARMENT.**"

## LIMITATIONS

■ In his first issue, appellant asserts the trial court erred in rendering judgment against appellant based on the jury's answers to questions 5, 9, 17, and 21 because any discipline based on those answers was barred by the limitations provision in Texas Rule of Disciplinary Procedure 15.06. Rule 15.06 provides,

**15.06. Limitations, Rules and Exceptions**

No attorney licensed to practice law in Texas may be disciplined for Professional Misconduct occurring more than four years before the time when the allegation of Professional Misconduct is brought to the attention of the Office of Chief Disciplinary Counsel, except in cases in which disbarment or suspension is compulsory. Limitations will not begin to run where fraud or concealment is involved until such Professional Misconduct is discovered or should have been discovered in the exercise of reasonable diligence by the Complainant.

Tex.R. Disciplinary P. 15.06, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (Vernon 2005).

On question 9, the jury found appellant's conduct occurred "post 10–15–98," which was within four years of the Duriseaus' grievance. Thus, rule 15.06 does not bar

discipline for the conduct found in question 9.

On questions 5, 17, and 21, the jury found appellant's conduct occurred "pre–10/15/98," which was more than four years before the grievance, that appellant concealed the conduct, and that the Duriseaus should have discovered the misconduct by March 1, 1997. If limitations applies to those questions, then the trial court erred in disciplining appellant based on the jury's answers to those questions.

■ The Commission for Lawyer Discipline asserts appellant waived the affirmative defense of limitations because he did not plead it. Rule 94 of the Texas Rules of Civil Procedure provides, "In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense." TEX.R. CIV. P. 94. Limitations is an affirmative defense that is waived if not pleaded. *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 544 (Tex.App.-Dallas 2005, no pet.).

On the first day of trial, before jury selection began, appellant asked the trial court to dismiss the case based on laches, and appellant stated he pleaded laches in his answer. The trial court examined appellant's answer and stated no affirmative defenses appeared to have been pleaded. The trial court showed the pleading to appellant, and appellant said, "Okay, Your Honor. If it's not there, it's not there." The parties then proceeded with jury selection and began the trial.

The next morning, appellant moved for leave to file a trial amendment asserting laches and the statute of limitations. Appellant argued that because the Commission was permitted to amend its petition on the eve of trial to drop one of the allegations against him, he ought to be permitted to amend his answer to assert limitations and laches. The trial court observed that the Commission's amendment was no disadvantage to appellant and did not support appellant's argument that he could raise a defense. Appellant also argued the Commission was not surprised by the limitations allegation because he asserted it in the administrative proceeding. However, the lawyer for the Commission stated "that's not the case." The trial court denied leave to file the trial amendment. Appellant then argued that the language of rule 15.06 was an absolute bar to discipline based on conduct outside the rule's limitations period and that this bar could not be waived by a lawyer's failure to plead it. The trial court rejected that argument as well. Appellant brings these same arguments on appeal.

Appellant argues that the mandatory nature of the language in rule 15.06, "No attorney ... may be disciplined for Professional Misconduct occurring more than four years before ... the allegation ... is brought to the attention of the Office of Chief Disciplinary Counsel," makes it an absolute bar to discipline for conduct outside the limitations period. However, courts have held other statutes of limitations containing mandatory language could be waived. TEX. FAM.CODE ANN. § 160.607(a) (Vernon 2008) ("a proceeding ... to adjudicate the parentage of a child ... shall be commenced not later than the fourth anniversary of the date of the birth of the child"); *Miles v. Peacock*, 229 S.W.3d 384, 387–88 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (family code § 160.607(a) waived by failure to plead limitations); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (Vernon 2002) ("A person must bring suit on the following actions not later than four years after the day the cause of action accrues: ... (3) debt...."); *Frazier v. Havens*, 102 S.W.3d 406, 411–12 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (four-year statute of limitations waived by failure to

plead it). Thus, the mandatory nature of the language does not preclude waiver.

In arguing that rule 15.06 is an absolute bar to discipline for conduct outside the limitations period, regardless of whether the attorney pleaded the rule, appellant relies on two other provisions of the rules of disciplinary procedure: rule 1.05, "Nothing in these rules is to be construed, explicitly or implicitly, to amend or repeal in any way the Texas Disciplinary Rules of Professional," and rule 3.08.B, "Except as varied by these rules, the Texas Rules of Civil Procedure apply." Tex.R. Disciplinary P. 1.05, 3.08.B. Appellant asserts that rule 1.05 shows the supreme court knew how to provide that the rules of disciplinary procedure would not affect other rules, and rule 3.08.B shows the supreme court considered it possible for the rules of civil procedure to be varied by the rules of disciplinary procedure. However, even if it is possible for the rules of disciplinary procedure to vary the application of the rules of civil procedure, they do not necessarily do so. As discussed above, the mandatory nature of the language in rule 15.06 does not prevent the waiver of a statute of limitations due to the failure to plead it as an affirmative defense.

■ Appellant next asserts the trial court abused its discretion by allowing the Commission to amend its petition on the first day of trial to drop allegations against appellant while denying appellant's motion to amend his answer to assert the affirmative defenses of limitations and laches. In its third amended petition, the Commission alleged appellant failed to respond to the Commission's complaints within thirty days of notice, thereby violating Texas Disciplinary Rule of Professional Conduct 8.04(a)(8);[1] the Commission's fourth amended petition omitted that allegation. The Commission's dropping this allegation benefitted appellant because it removed an additional potential ground, if proved, for discipline. Appellant argues the dropping of this allegation lessened the Commission's burden of proof. Appellant does not explain, and we do not perceive, how the dropping of the allegation lessened the Commission's burden of proof on the remaining allegations or benefitted it in any way. Appellant's proposed amendment to his answer, however, would have added additional affirmative defenses during the trial, which would have benefitted him to the detriment of the Commission. We conclude the trial court did not abuse its discretion by permitting the Commission to amend its petition to omit one of the allegations against appellant while denying appellant's motion to amend his response to assert affirmative defenses.

■ Appellant next asserts the trial court abused its discretion in denying his motion to amend his answer because he had asserted rule 15.06's statute of limitations in his response to the investigatory panel, so the Commission could not have suffered any surprise or prejudice. The trial court has no discretion to deny a trial amendment unless (1) the party opposing the amendment presents evidence of surprise or prejudice or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990); *G.R.A.V.I.T.Y. Enters., Inc.*, 177 S.W.3d at 542. In these

---

1. Rule 8.04(a)(8) provides, "A lawyer shall not ... (8) fail to timely furnish to the Chief Disciplinary Counsel's office or a district grievance committee a response or other information as required by the Texas Rules of Disciplinary Procedure, unless he or she in good faith timely asserts a privilege or other legal ground for failure to do so...." Tex. Disciplinary R. Prof'l Conduct 8.04(a)(8), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon Supp.2008) (Tex. State Bar R. art. X, § 9).

two situations, the decision to allow or deny the amendment rests with the sound discretion of the trial court, and the trial court's decision will not be overturned unless it constitutes a clear abuse of discretion. *State Bar v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.1994); *G.R.A.V.I.T.Y. Enters., Inc.,* 177 S.W.3d at 542. In this case, appellant's requested amendment would have asserted new affirmative defenses, limitations and laches, making it prejudicial on its face. The Commission objected to the amendment. Although appellant asserted to the trial court that the Commission was not surprised, the attorney for the Commission stated, "That's not the case." Appellant did not proffer to the trial court his response to the investigatory panel before the trial court denied the request to amend,[2] counsel for the Commission did not concede that appellant raised rule 15.06 before the investigatory committee, and the record does not show the response was before the trial court at the time it ruled on appellant request to amend his answer. "It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted." *Methodist Hosps. v. Tall,* 972 S.W.2d 894, 898 (Tex. App.-Corpus Christi 1998, no pet.). Under these facts, we cannot conclude the trial court abused its discretion in denying appellant's request to amend his answer to assert affirmative defenses. We overrule appellant's first issue.

## SUFFICIENCY OF THE EVIDENCE

In his second through fifth issues, appellant asserts the evidence is legally insufficient to support the jury's findings of misconduct. In a disciplinary action, the Commission has the burden of proof, and the disciplinary action must be proved by a preponderance of the evidence. Tex.R. Disciplinary P. 3.08.C.,D.

 In a legal-sufficiency review under the preponderance-of-the-evidence standard, we look at all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005); *McIntyre v. Commission for Lawyer Discipline,* 247 S.W.3d 434, 441–442 (Tex.App.-Dallas 2008, pet. filed). To give appropriate deference to the fact-finder's conclusions and the role of a court conducting a legal-sufficiency review, looking at the evidence in the light most favorable to the finding means that a reviewing court must assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. *Wilson,* 168 S.W.3d at 822. A corollary to this requirement is that a court should disregard all evidence that a reasonable fact-finder could have disbelieved or found to have not been credible. *Id.*

### Failure to Communicate

 In the second issue, appellant asserts the jury's answer to question 1, that appellant "fail[ed] to keep [the Duriseaus] informed about the status of their legal matter and [to] promptly comply with their reasonable requests for information," lacked legally sufficient evidence because no request for information pleaded and proved by the Commission was communicated to appellant. Appellant asserts the only communication the Commission pleaded that could be the request for information was the Duriseaus' letter dated January 9, 2001 requesting return of their files.

---

**2.** Later in the trial, during his own testimony, appellant offered his written response to the investigatory committee into evidence, but the trial court denied admission of the response because it was inadmissible hearsay. Nothing shows the response was before the court when it ruled on appellant's motion to amend his answer.

Appellant argues that communication does not constitute a "reasonable request for information" because the letter was misaddressed.

The January 9, 2001 letter was addressed to appellant at "3767 Forest Lane, Ste 124 Dallas, TX 75244–7100." Appellant asserts the address omitted a crucial element, the Private Mail Box (PMB) number, 1140. However, appellant did not testify that he did not receive the documents addressed to the Forest Lane address without the PMB number. Also, one of the documents sent to the Forest Lane address without the PMB number was the justice court's notice of the trial setting in Dr. Barnes's suits. Althea Duriseau testified appellant told her the date of the trial setting and that she did not need to attend. The jury could conclude from this evidence that appellant could receive mail at the Forest Lane address even if it omitted the PMB number.

■ The Commission also generally alleged appellant agreed to represent the Duriseaus in Dr. Barnes's lawsuits and "[t]hereafter, Respondent failed to communicate with the Complainants about the status of the case." This allegation was sufficient to give appellant fair notice of the Commission's claim, and appellant did not specially except to any lack of specificity in the allegation. Accordingly, he waived any complaint of lack of specificity in the allegation. *See* Tex.R. Civ. P. 90. This allegation of appellant's failure to communicate was proven by identical letters from the Duriseaus dated December 15, 2000:

Dear Mr. Beard,

Since September 9, 2000 I have been trying to contact you because of being served a court summons in small claims court. This summons was on behalf of Dr. Herman Barnes, Chiropractor. This is the same doctor I solictied [sic] your services for 7 years ago, the same matter that I thought was long ago finalized. I have made multiple telephone attemps [sic] daily for your assistance in correcting this matter. You made one attemp [sic] at obtaining copies of the summons. After this time again it was multiple telephone calls, leaving voice messages several times a day every day with no return call from you. On one occasion when I finally did get a call you made suspect excuses for not getting back with me earlier. It was at this time you were asked what the court day was. You did not give the date, but said you were filing an answer to the summons based on this being beyond the 7 years statue [sic] of limitations. Two weeks from today you answered a call stating you had just gotten divorced and still had not filed the papers. Everyday for the past two weeks I have continued to make multiple daily calls to you and you have not returned my calls or have had no form of communication. When I telephoned you stating that I had received a default judgement from the court for failure to appear or a written answer to the court, I have received no answer. I have again attempted to contact you with multiple telephone calls, as you currently have no office at which I would have appeared.

In light of your lack of respect for me as a client, and your failure to represent me in this matter per our contract, you are here by [sic] given notice of cancellation of my contract with you as my attorney.

(Original in all capital letters.) Although these letters are not themselves reasonable requests for information, their contents contain evidence of appellant's repeated failure to comply with reasonable requests for information. The Duriseaus also testified that appellant did not tell them he had the judgments from the justice court set aside on appeal.

We conclude the record contains legally sufficient evidence that appellant "fail[ed] to keep [the Duriseaus] informed about the status of their legal matter and [to] promptly comply with their reasonable requests for information." We overrule appellant's second issue.

### Failure to Surrender Client Files

In his third issue, appellant asserts the evidence is legally insufficient to support the jury's finding in question 26 that appellant "fail[ed] to surrender client files to [the Duriseaus] upon termination of the representation." Appellant argues he never received the January 9, 2001 letter from the Duriseaus requesting the return of their files because the letter was addressed to the Forest Lane address and omitted the PMB number. However, as discussed above, appellant did not testify he did not receive the letter and no evidence showed the letter was undeliverable without the PMB number. Carolyn Duriseau testified she "had no reason to believe that [appellant] hadn't gotten it [the January 9, 2001 letter] because I talked to him—well, we talked to him."

Appellant also argues the jury's answer to question 26, that he failed to surrender the files, conflicts with the answer to question 25, that he did not fail to withdraw from representing the Duriseaus when discharged. Appellant did not preserve this complaint for appellate review because he did not raise any contention concerning conflicting jury findings before the jury was discharged. *Columbia Med. Ctr. v. Bush*, 122 S.W.3d 835, 861 (Tex. App.-Fort Worth 2003, pet. denied). Furthermore, regardless of when appellant's representation of the Duriseaus terminated, the evidence is undisputed that appellant never returned their files.

We conclude the evidence is legally sufficient to support the jury's finding that appellant "fail[ed] to surrender client files

to [the Duriseaus] upon termination of the representation." We overrule appellant's third issue.

### Sufficiency of all the Findings of Professional Misconduct

In his fourth and fifth issues, appellant contends there is "legally no evidence" and "legally insufficient evidence" to support each jury finding of professional misconduct. Appellant asserts that the only evidence was the testimony of the Duriseaus. He argues their testimony was legally insufficient to support any of the findings because none of the Duriseaus was able to testify to any specific act constituting professional misconduct but "merely griped and complained about the Appellant as if they had been well-coached for their appearances as witnesses."

The Duriseaus testified about appellant's failure to keep them informed of the status of their legal matters, his failure to return their files, his failure to pay Dr. Barnes out of the settlement funds, and his failure to provide an accounting of the settlement funds. This evidence is legally sufficient to support the jury's answers to questions 1, 5, 17, 21, and 26.

Concerning the jury's finding to question 9, that appellant "fail[ed] to keep and preserve complete records relating to [the Duriseaus'] settlement funds for a period of five years after termination of the representation," the record shows appellant had destroyed the records by the time the grievance was filed in October 2002. Appellant argues the termination of the representation occurred on August 26, 1996, the day the Duriseaus signed the settlement agreement with the insurance company. However, the Duriseaus testified appellant continued to represent them on the case after they signed the settlement agreement (1) by telling them he would try to get Dr. Barnes to lower his

fees, which would provide additional funds for them, and (2) by agreeing to represent them in Dr. Barnes's suit for nonpayment of the fees that should have been paid out of the settlement funds appellant had retained. Thus appellant's representation of the Duriseaus continued until at least 2000 when they notified him they were terminating his services. This evidence supports the jury's finding that appellant failed to keep the records of the settlement funds for five years following the termination of the representation.

After considering all the evidence, we conclude the evidence is legally sufficient to support the jury's findings of professional misconduct. We overrule appellant's fourth and fifth issues.

## JURY CHARGE

■ In his sixth issue, appellant asserts the trial court erred when it materially changed the jury charge after jury deliberations began. Although the trial court had denied appellant leave to raise the defense of limitations under rule 15.06, the court wanted the jury to make appropriate findings on the limitations issue in case an appellate court determined appellant had not waived the defense by failing to plead it timely. For each finding of professional misconduct, the court initially instructed the jury to determine (a) the date the misconduct occurred, (b) whether appellant concealed the misconduct, and, if he did conceal it, (c) the date the Duriseaus should have discovered the misconduct through the exercise of reasonable diligence. After the jury began deliberating, the court decided that instead of having the jury determine the date the misconduct occurred, it was necessary for the jury to determine only whether the conduct occurred within four years of the filing of the grievance. So, over appellant's objection, the trial court submitted supplemental instructions to the jury to determine whether the misconduct oc-

curred "pre 10–15–98" or "post 10–15–98" instead determining the exact date on which the misconduct occurred. Appellant objected that the supplemental instructions would be confusing to the jury, that appellant would benefit from having the jury find a specific date, and that "changing the instructions at this point in time ... definitely hurts my position."

On appeal, appellant argues the court erred in submitting the supplemental instructions because they constitute a comment on the weight of the evidence, violated fundamental fairness, equal protection, and due course of law. Appellant did not make these objection before the court submitted the instructions. Any complaint to a jury charge is waived unless specifically included in an objection. TEX.R. CIV. P. 274; TEX.R.APP. P. 33.1(a)(1); *Fish v. Dallas Indep. Sch. Dist.*, 170 S.W.3d 226, 230 (Tex.App.-Dallas 2005, pet. denied). Because appellant did not make these objections to the trial court, they are waived.

We overrule appellant's sixth issue.

## CONCLUSION

We affirm the trial court's judgment.