**Opinion issued January 24, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00650-CV

————————————

**CBS OUTDOOR, INC., Appellant**

**V.**

**LARRY E. POTTER, Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-54488**

---

## MEMORANDUM OPINION

CBS Outdoor, Inc. appeals the trial court's rendition of judgment after a jury

trial on Larry E. Potter's claim of breach of contract against CBS Outdoor. In

eight issues, CBS Outdoor argues (1) the trial court erred in granting Potter's

motion for summary judgment on liability and denying its cross-motion for summary judgment claiming that Potter's breach of contract claim was barred by res judicata, (2) an intervening contract controlled the parties' relationship as a matter of law, (3) the evidence was legally and factually insufficient to support the jury's award of lost profits, (4) Potter failed to mitigate his damages, (5) Potter's expert witness's testimony should have been excluded because the expert improperly communicated with CBS Outdoor during the lawsuit, and (6) the trial court improperly refused CBS Outdoor's proposed jury questions and instructions.

We affirm.

## Background

In August 1, 1995, CBS Outdoor and Potter executed three identical ground leases.[1] The leases were for a ten-year term. What happened with the billboards at the end of the ten-year term was the subject of much dispute between the parties, finally leading to litigation. Potter brought suit in 2005, ultimately seeking a declaratory judgment of his and CBS Outdoor's rights under the original leases. The trial court declared that CBS Outdoor had exercised its right of first refusal to

---

[1] The leases were, in fact, executed by Viacom Outdoor, Inc. Viacom subsequently changed its name to National Advertising Company. More recently, the company has changed its name to CBS Outdoor, Inc. The parties agreed in a Rule 11 agreement at trial that the company would be regarded as CBS Outdoor, Inc.

re-lease the land and that Potter had the right to purchase the billboards from CBS Outdoor. CBS Outdoor appealed both determinations. We affirmed.[2]

In December 2006, while the first suit was pending, the parties agreed to enter into three identical term leases for the billboards until final resolution of the dispute. Under the term leases, the parties agreed that, until the final resolution of the first suit, CBS Outdoor could use the billboards and pay rental income in accordance with the original leases. The term leases also provided, however, that adoption of the terms of the original leases "shall not be construed to revive [the original leases] or waive any parties' rights with respect to" the original leases.

Following the appeal of the first suit, the parties began to dispute how the value of the billboards would be calculated for the sale to Potter. As a result, Potter filed a motion to enforce the judgment in the first suit. The trial court again found in favor of Potter, ordering the sale of the billboards in compliance with the court's construction of the contract. The sales were completed May 2009.

The next month, Potter presented a claim for lost profits to CBS Outdoor. Potter brought the current suit in September 2009, claiming breach of contract and seeking lost profits from the time that CBS Outdoor had become obligated to sell the billboards to the time that it actually sold the billboards, a period of almost four years. Potter subsequently filed a motion for partial summary judgment, claiming

---

[2]     *See Nat'l Adver. Co. v. Potter*, No. 01-06-01042-CV, 2008 WL 920338 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (mem. op.).

that it was entitled to summary judgment on the matter of liability based on the trial court's declarations in the first suit. CBS Outdoor filed a cross-motion for summary judgment, claiming that Potter's breach of contract was barred by res judicata. The trial court granted Potter's motion for partial summary judgment and denied CBS Outdoor's motion for summary judgment.

The parties went to trial on damages on February 21, 2011. Potter testified about his estimated business costs during the time CBS Outdoor retained control of the billboards after the original leases terminated. Potter also presented Michael Albrecht as his expert on the amount of Potter's lost profits. Albrecht is the president of Freed Advertising, a company that creates advertisements for clients and works with media outlets, such as CBS Outdoor, to place the advertisements. He has worked in the advertising business for 30 years.

Albrecht testified about the maximum amount Potter could have received in revenue from the billboards during the time in question, from 2005 to 2009. Albrecht used certain sales from CBS Outdoor's records on actual advertising sold for the periods available. To determine the value for 2010, he checked on prices with a couple of billboard companies for similar billboards in the area. For time periods in between without sales, Albrecht took averages from the available data.

Albrecht used those figures to determine the maximum ideal amount someone could realize from the billboards. He then made adjustments to this

4

amount to determine a reasonable maximum amount that Potter could have earned. His first adjustments were for the estimated percentage of days that the boards would not generate revenue for various reasons, such as client delays, cancellations, and printing. For the billboard faces that were visible from the other side of the highway, Albrecht reduced the potential revenue another 10 percent. Based on these deductions, Albrecht determined that the maximum reasonable revenue for the billboards for the relevant period was $1,450,829.

During his testimony, Albrecht testified that he had obtained data from CBS Outdoor on their rates in 2010 for billboards. This testimony arose when Potter's attorney was eliciting testimony in order to introduce the relevant document into evidence. The substance of the document was never discussed. On voir dire, Albrecht admitted that he had obtained the document from CBS Outdoor during the course of litigation and that he obtained it for the purpose of litigation. CBS Outdoor argued the Albrecht had committed discovery abuse and asked the trial court to strike him as a witness and to instruct the jury to disregard all of his previous testimony. The trial court denied the motion, but prohibited Albrecht "from testifying directly or indirectly about any . . . direct contact that he had with [CBS Outdoor] or anybody acting on [its] behalf or disclosing the source of any information that he derived from" CBS Outdoor. The document was not admitted into evidence.

CBS Outdoor presented the testimony of two employees and two experts to counter Potter's and Albrecht's testimony. Their main expert on valuation was Allen Brivic, an owner of a media buying service with almost 40 years of experience in the advertising business. Brivic did not offer a competing calculation of Potter's lost profits. Instead, he testified to multiple ways that he found Albrecht's opinions to be unreasonable. Similarly, CBS Outdoor presented another expert, James Mandel. Mandel is a professor at Rice University and a consultant in financial strategy. Like Brivic, Mandel testified to what he believed to be flaws in Albrecht's testimony.

The jury determined that CBS Outdoor owed Potter $692,699 in lost profits. CBS Outdoor subsequently filed a motion for judgment notwithstanding the verdict, arguing that the term leases signed by the parties after the termination of the first leases controlled the rights and obligations of the parties and, accordingly, that Potter could not recover lost profits. The trial court denied the motion. CBS Outdoor appealed.

## Res Judicata

In its first issue, CBS Outdoor argues that the trial court erred in granting Potter's motion for summary judgment on liability and denying its cross-motion for summary judgment claiming that Potter's breach of contract claim was barred by res judicata.

6

**A.    Standard of Review**

The summary-judgment movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a "traditional" summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When a party moves for summary judgment on a claim for which it bears the burden of proof, it must show that it is entitled to prevail on each element of its cause of action. *See Parker v. Dodge*, 98 S.W.3d 297, 299 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The party meets this burden if it produces evidence that would be sufficient to support an instructed verdict at trial. *Id.*

To determine if there is a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could

do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and "render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## B.    Analysis

CBS Outdoor's argument for why the trial court should have granted its motion for summary judgment and denied Potter's motion for partial summary judgment is the same: Potter's breach of contract claim was barred by res judicata. Res judicata is an affirmative defense. TEX. R. CIV. P. 94. Accordingly, CBS Outdoor bore the burden of establishing as a matter of law that res judicata applied. *See Parker*, 98 S.W.3d at 299. The elements for establishing res judicata, or claim preclusion, are "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

8

An exception to the application of res judicata is when the original suit sought only a declaratory judgment. *See Valley Oil Co. v. City of Garland*, 499 S.W.2d 333, 335 (Tex. Civ. App.—Dallas 1973, writ ref'd n.r.e.). In this situation, the first judgment provides only declaratory relief and does not bar a subsequent proceeding for coercive relief stemming from the declaratory judgment. *See id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 37.011 (Vernon 2008) (providing "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper").

> The rationale for this apparent departure from the usual rule of res judicata is that the losing party in a declaratory judgment action can normally be expected to recognize the rights declared by the judgment and act accordingly, but that if he fails to do so, the court should have ample power to enforce the judgment by subsequent coercive orders, whether or not such relief was sought in the original action.

*Valley Oil*, 499 S.W.2d at 336.

Under this exception, the only matters excluded from subsequent litigation are what was actually considered and ruled on in the original action. *See Alsheikh v. Arabian Nat'l Shipping Corp.*, 01-08-00007-CV, 2009 WL 884795, at *2 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.). In other words, while issue preclusion (collateral estoppel) applies to prior declaratory judgment actions, claim preclusion (res judicata) does not. *See id.*; *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992) (distinguishing between issue

9

preclusion and claim preclusion and defining issue preclusion as preventing relitigation of particular issues already resolved in prior suit).

CBS Outdoor argued in its motion for summary judgment that, although Potter "nominally styled" his petition in the first lawsuit as a declaratory judgment action, "it was merely a straightforward breach of contract suit." We disagree.

"A person interested under a . . . written contract. . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2008). "A contract may be construed either before or after there has been a breach." *Id.* § 37.004(b). Accordingly, a person can bring a declaratory judgment action following a breach of contract and have the rights under the contract declared. While such an action has much in common with a breach of contract action, they are distinct from each other. Specifically, a declaratory judgment action has the effect of determining liability without awarding damages, while a breach of contract action seeks both a determination of liability and an award of damages. *See Intercontinental Group P'ship v. K.B. Home Lone Star, L.P.*, 295 S.W.3d 650, 660–61 (Tex. 2009).

CBS Outdoor argued in its motion that Potter sought damages in the first lawsuit. In his original petition, Potter's prayer for relief included "[a]n order awarding Larry E. Potter the fair market value for usage of the billboards beyond

10

the contractual period of the Lease Agreement."  Potter subsequently amended his petition, however, and that request was not in his live pleading.  While he did assert in his live pleading that he was suffering damages in lost profits as a result of CBS Outdoor's refusal to sell the billboards to him, Potter never sought any relief related to this assertion.  Instead, he sought a "declaration that Mr. Potter is entitled to purchase the entire sign structures and permits" from CBS Outdoor.  Moreover, Potter expressly stated in his petition that he was only seeking a declaratory judgment on his rights under the contract.

The general rule is that an amended pleading supersedes an earlier pleading. TEX. R. CIV. P. 65; *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 793 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  In that case, any claims asserted in the earlier petition are voluntarily dismissed.  *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 634 (Tex. 2008).  Such a dismissal of claims or parties is without prejudice.  *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972). When a claim is dismissed without prejudice, res judicata does not apply.  *Sahagun v. Ibarra*, 90 S.W.3d 860, 863 (Tex. App.—San Antonio 2002, no pet.). Accordingly, the request for relief in the form of damages in the original petition has no res judicata effect since it was dismissed without prejudice.  We hold that Potter did not assert a breach of contract claim in his live petition in the first suit, nor did he seek damages related to such a claim.

On appeal, CBS Outdoor argues that a party seeking supplemental relief related to the declaratory judgment action must show that the relief "is necessary and proper to enforce the declaratory judgment." This is not quite an accurate statement of the law. "Further relief based on a declaratory judgment or decree may be granted whenever necessary *or* proper." TEX. CIV. PRAC. & REM. CODE ANN. § 37.011 (emphasis added). "Necessary or proper" is disjunctive, not conjunctive. Additionally, the further relief available is not limited only to actions necessary to enforce the judgment. Instead, further relief is available for anything that "serve[s] to effectuate the underlying judgment." *State v. Anderson Courier Service*, 222 S.W.3d 62, 65 (Tex. App.—Austin 2005, pet. denied).

The trial court declared in the first suit that, under the terms of the contracts, CBS Outdoor was required to transfer ownership of the billboards to Potter. Potter alleged in the most recent suit that CBS Outdoor breached the contracts by not transferring ownership to Potter at the time required by the contracts. He sought damages for the lost revenue of the billboards from the point the billboards should have been transferred to the point when the billboards were actually transferred. This relief serves to effectuate the underlying judgment by providing Potter with damages he suffered as a result of CBS Outdoor's failure to carry out its contractual obligation declared in the first suit. By the same token, it is proper further relief based on the declaratory judgment.

12

CBS Outdoor argues that *Anderson Courier* establishes that Potter could not recover under section 37.011. In *Anderson Courier*, the plaintiff challenged the constitutionality of a statute under the Declaratory Judgment Act. *Id.* at 64. The plaintiff sought attorneys' fees in addition to its request for a declaratory judgment. *Id.* The trial court upheld the constitutionality of the statute, and the plaintiff appealed. *Id.* The court of appeals reversed and rendered. *Id.* The plaintiff did not ask the appellate court to reverse for attorneys' fees or render attorneys' fees. *Id.*

After the Texas Supreme Court denied the petition for discretionary review, the plaintiff filed a motion for supplemental relief under 37.011, seeking the attorneys' fees allowed under the Declaratory Judgment Act. *Id.* The trial court awarded the fees, and the matter was appealed. *Id.* The appellate court reversed the award. *Id.* at 67–68. It noted that 37.011 allows "further relief" that is "necessary or proper." *See id.* at 66. As a result, any further "'relief sought must be "additional relief" arising out of the issues resolved by the prior declaratory judgment.'" *Id.* (quoting *Lakeside Realty, Inc. v. Life Scape Homeowners Ass'n*, 202 S.W.3d 186, 190 (Tex. App.—Tyler 2005, no pet.)). The court then reasoned that an award of attorneys' fees allowed under the declaratory judgment act "cannot be construed as 'in addition' to that judgment. Attorneys' fees would have

13

been part and parcel of the initial declaratory judgment action, not supplemental relief." *Id.*

The distinction here is apparent. Potter's subsequent suit did not involve a request for attorney's fees permissible under the Declaratory Judgment Act. Instead, he sought breach of contract damages from CBS Outdoor's failure to sell the billboards when it was obligated to do so. As we have held above, this is proper further relief based on the declaratory judgment. To construe *Anderson Courier* as standing for the proposition that all claims for relief—as opposed to just those claims for relief specifically provided for in the Declaratory Judgment Act— must be brought at the same time the declaratory judgment action is brought would eviscerate the exception that *Anderson Courier* recognizes exists. *See id.*

Finally, CBS Outdoor argues that section 37.011 only applies when a case is remanded for further proceedings after an appeal. This is incorrect. When a case is remanded for further proceedings, res judicata does not apply at all because there is no second action. *Jay Petroleum, L.L.C. v. EOG Resources, Inc.*, 332 S.W.3d 534, 540 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Further relief sought under section 37.011 is not limited to claims brought in the same cause. *Valley Oil*, 499 S.W.2d at 336. Instead, it "may be sought in the same proceeding or in a later proceeding." *Lakeside Realty*, 202 S.W.3d at 191.

We hold that Potter's breach of contract claim is not barred by res judicata. Accordingly, we hold the trial court did not err in denying CBS Outdoor's motion for summary judgment and granting Potter's motion for partial summary judgment on liability. We overrule CBS Outdoor's first issue.

## Effect of Term Leases

In its second issue, CBS Outdoor argues the trial court erred by denying another motion for summary judgment and a motion for judgment notwithstanding the verdict based on the same argument: the term leases signed by the parties after the termination of the first leases controlled the rights and obligations of the parties. "After a trial on the merits, . . . the denial of a motion for summary judgment may not be reviewed on appeal." *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 509 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Accordingly, we only review the denial of the motion for judgment notwithstanding the verdict.

### A. Standard of Review

A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict only when a directed verdict would have been proper. *See* TEX. R. CIV. P. 301; *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We review challenges to a trial

15

court's ruling on a motion for JNOV under the same legal-sufficiency test applied to appellate no-evidence challenges. *See Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 830 (Tex. 2009); *City of Keller*, 168 S.W.3d at 822–23, 827. Applying that standard, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Tanner*, 289 S.W.3d at 830. We also must be cognizant that, "[e]ven though the evidence is viewed in the light most favorable to the verdict, it cannot be considered in isolated bits and pieces divorced from its surroundings; it must be viewed in its proper context with other evidence." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (citing *City of Keller*, 168 S.W.3d at 827) .

If more than a scintilla of probative evidence supports the finding, the legal sufficiency challenge fails. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). In contrast, evidence that creates no more than "a mere surmise or suspicion of its existence" is only a scintilla and, thus, no evidence. *Ford Motor*

*Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

## B.    Analysis

In its motion for judgment notwithstanding the verdict, CBS Outdoor argued, "Even if the original leases were breached . . . the alleged breach is immaterial because the Term Leases controlled the rights between the parties from the expiration of the [original leases] until the termination of the first lawsuit." CBS Outdoor raises the same argument on appeal.  While we agree that the term leases controlled the rights of the parties during the first lawsuit, we disagree that they rendered any breach of the original leases immaterial.

During the course of the first suit, the parties entered into term leases for each of the billboards.  Under the term leases, the parties agreed that, until the final resolution of the first suit, CBS Outdoor could use the billboards and pay rental income in accordance with the original leases.  The term leases also provided, however, that adoption of the terms of the original leases "shall not be construed to revive [the original leases] or waive any parties' rights with respect to" the original leases.

The trial court declared in the first suit that, under the terms of the contracts, CBS Outdoor was required to transfer ownership of the billboards to Potter.  The transfer of ownership of the billboards was a right vested in Potter.  The term

leases expressly stated that they did not waive any rights with respect to the original lease. The trial court determined in the latest suit that CBS Outdoor's failure to transfer ownership of the billboards was a breach of the original leases, and the jury determined the damages. The term leases expressly provide that the adoption of the terms of the original leases would not waive any rights under the original leases. CBS Outdoor does not cite to any other portion of the term leases that did, in fact, waive those rights.

Instead, CBS Outdoor argues that this provision in the term leases could not have preserved any right to profits for Potter because the original leases did not "confer profits on Potter." This argument fundamentally misconceives the breach CBS Outdoor has been found to have committed. Under the terms of the original leases, CBS Outdoor was required to transfer ownership of the billboards to Potter after the original leases terminated. Accordingly, if CBS Outdoor had not breached the leases, Potter would have owned the billboards, including the rights to all profits. It is immaterial, then, who had the rights to the profits during the term of the original leases. By failing to transfer ownership of the billboards to Potter upon the termination of the original leases, CBS Outdoor breached the original leases and prevented Potter from obtaining profits from use of the billboards. These are the damages for which Potter sought recovery in the latest suit.

We overrule CBS Outdoor's second issue.

## Expert Witness Sanctions

In its sixth issue, CBS Outdoor argues that the trial court should have excluded Potter's expert witness because the witness improperly communicated with CBS Outdoor.

### A. Standard of Review

We review a trial court's decision to impose sanctions under an abuse of discretion standard. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules and principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

### B. Analysis

During trial, Potter's expert witness on lost revenue, Albrecht, testified that he had obtained data from CBS Outdoor on their rates in 2010 for billboards. This testimony arose when Potter's attorney was eliciting testimony in order to

19

introduce the relevant document into evidence. The substance of the document was never discussed. On voir dire, Albrecht admitted that he had obtained the document from CBS Outdoor during the course of litigation and that he obtained it for the purpose of litigation. CBS Outdoor argued the Albrecht had committed discovery abuse and asked the trial court to strike him as a witness and to instruct the jury to disregard all of his previous testimony. The trial court denied the motion, but prohibited Albrecht "from testifying directly or indirectly about any . . . direct contact that he had with [CBS Outdoor] or anybody acting on [its] behalf or disclosing the source of any information that he derived from" CBS Outdoor. The document was not admitted into evidence.

CBS Outdoor relies on Rule 4.02(b) of the Texas Disciplinary Rules of Professional Conduct and *Aguilar* to establish that Albrecht's communication with CBS Outdoor was a sanctionable discovery violation. *See* Tex. Disciplinary Rules Prof'l Conduct R. 4.02(b), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar R., art. X, § 9); *Aguilar v. Trujillo*, 162 S.W.3d 839, 848 (Tex. App.—El Paso 2005, pet. denied). Rule 4.02(b) prohibits an attorney representing a client from communicating without consent about the subject of the representation with someone retained by another lawyer involved in the subject of the representation. Tex. Disciplinary Rules Prof'l Conduct R. 4.02(b).

CBS Outdoor recognizes that this rule applies to retained attorneys, but argues the principle should be the same in prohibiting a retained expert from contacting an opposing party who is represented by counsel. Assuming without deciding that this is correct, we hold that CBS Outdoor has failed to establish that this violation should have resulted in a complete exclusion of Potter's sole witness on lost revenue.

The authority for discovery sanctions derives from Rule 215.2 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 215.2. Central to this rule is the requirement that the sanction must be just. TEX. R. CIV. P. 215.2(b); *see also TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). "This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Id.* Similarly, "[a] sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.*

What CBS Outdoor sought from the trial court and seeks again on appeal amounts to a death penalty sanction. Striking Albrecht completely as a witness would have prevented Potter from presenting any evidence on the very thing he was seeking and that the trial court had already determined he was entitled to: lost

profits. "The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process." *Id.* "So, although punishment, deterrence, and securing compliance with our discovery rules continue to be valid reasons to impose sanctions, these considerations alone cannot justify a trial by sanction." *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). Instead, "[d]iscovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *TransAmerican*, 811 S.W.2d at 918.

Albrecht contacted CBS Outdoor one time and, in doing so, obtained information that CBS Outdoor was readily making available to anyone interested in leasing a billboard. While the better decision would have been to obtain this information through the formal discovery process, CBS Outdoor has failed to present any evidence that this alleged discovery violation justified a presumption that Potter's claims lacked merit. Accordingly, we hold that the trial court did not abuse its discretion by denying CBS Outdoor's motion to completely exclude Albrecht from testifying.

We overrule CBS Outdoor's sixth issue.

**Failure to Mitigate**

In its fourth issue, CBS Outdoor argues that the evidence establishes as a matter of law that Potter failed to mitigate his damages.

## A. Standard of Review

Failure to mitigate is an affirmative defense. *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997). When a party attacks the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.*

## B. Analysis

CBS Outdoor asserts without authority that Potter could have executed on a judgment that only declared Potter's rights under the original leases. Even

assuming without deciding that this is correct, we hold that CBS Outdoor failed to carry its burden.

A defendant asserting failure to mitigate at trial must establish that the plaintiff failed to mitigate and the amount by which the plaintiff could have reduced its damages. *See Landry's Seafood House-Addison, Inc. v. Snadon*, 233 S.W.3d 430, 436 (Tex. App.—Dallas 2007, pet. denied); *Austin Hill Country Realty*, 948 S.W.2d at 299 (holding "landlord's failure to use reasonable efforts to mitigate damages bars the landlord's recovery against the breaching tenant *only to the extent* that damages reasonably could have been avoided" (emphasis added)). "Thus, where a defendant proves failure to mitigate but not the amount of damages that could have been avoided, it is not entitled to any reduction in damages." *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 688 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

While it did present some evidence that Potter did not attempt to execute on the declaratory judgment while it was on appeal, CBS Outdoor presented no evidence on the amount of damages that could have been avoided. Accordingly, we hold that CBS Outdoor has failed to establish as a matter of law that is met its burden on its affirmative defense of failure to mitigate. We overrule CBS Outdoor's fourth issue.

## Legal and Factual Sufficiency

CBS Outdoor identifies its fifth issue as an argument that the trial court should have excluded Potter's expert witness because he was unqualified to testify as an expert. Potter correctly argues that CBS Outdoor waived any challenge to Albrecht qualifications because it failed to raise this issue at trial. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 143–44 (Tex. 2004) (holding complaint that expert was not qualified to testify was not preserved by failing to raise it before the trial court); TEX. R. APP. P. 33.1(a)(1) (requiring complaint to be made to trial court in order to present complaint on appeal). Nevertheless, the body of CBS Outdoor's fifth issue complains of the sufficiency of Albrecht's testimony, not his qualifications to testify. Accordingly, we review this issue as a challenge to the legal and factual sufficiency of the evidence. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) (holding appellate courts must construe issues on appeal liberally).

In its third issue, CBS Outdoor argues there was legally and factually insufficient evidence to support the jury's award of lost profits. In its seventh issue, CBS Outdoor argues the jury's damage award was unsupported by the evidence.

## A.    Standard of Review

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable [fact finders] could, and disregard contrary evidence unless reasonable [fact finders] could not." *Id.* "If the evidence . . . would enable reasonable and fair-minded people to differ in their conclusions, then [fact finders] must be allowed to do so." *Id.* at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.* Although the reviewing court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it, if the evidence allows only one inference, neither fact finder nor the reviewing court may disregard it. *Id.*

To determine whether the evidence is factually sufficient to support a finding, an appellate court considers and weighs all evidence that was before the trial court. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and

26

manifestly unjust. *See id.* As the reviewing court, we may not act as fact finder and may not pass judgment on the credibility of witnesses or substitute our judgment for that of the trier of fact. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## B.  Analysis

Lost profits "must be shown by competent evidence with reasonable certainty." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). "The requirement of 'reasonable certainty' in the proof of lost profits is intended to be flexible enough to accommodate the myriad circumstances in which claims for lost profits arise." *Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994). Competent evidence consists of "opinions or estimates of lost profits . . . based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates." *Holt Atherton*, 835 S.W.2d at 84 (citations omitted).

The bulk of Potter's evidence of lost profits came from his expert, Albrecht. Albrecht testified about the maximum amount Potter could have received in revenue from the billboards during the time in question from 2005 to 2009. CBS Outdoor had sold advertisements on Potter's billboards in 2005, so Albrecht used

the records from CBS Outdoor on actual advertising sold to determine what sales Potter could have made for that year. Similarly, Albrecht used the records from CBS Outdoor on actual advertising sold during the period of the term lease to determine what sales Potter could have made in 2007 and 2008. For 2006, Albrecht took the average of 2005 and 2007. In order to come up with an amount for 2009, Albrecht took the average of 2008 and 2010. To determine the value for 2010, he checked on prices with a couple of billboard companies for similar billboards in the area. The values for each year were per-day values.

Albrecht then multiplied the per-day values by the number of days in each year that CBS Outdoor maintained ownership of the billboards after the time that the billboards should have been sold. This amount was $1,588,306. As Albrecht explained, this value represented "[i]f all the stars are aligned . . . what someone could realize off of these boards." He then made adjustments to this amount to determine a reasonable maximum amount that Potter could have earned. His first adjustments were for the estimated percentage of days that the boards would not generate revenue for various reasons, such as client delays, cancellations, and printing. For the billboard faces that were visible from the other side of the highway, Albrecht reduced the potential revenue another 10 percent. Based on these deductions, Albrecht determined that the maximum revenue for the billboards for the relevant period was $1,450,829.

Potter testified that his business costs for operating the billboards during the relevant period would have totaled $75,888. He also testified that, during the relevant period, he had received $151,413 from CBS Outdoor. Deducting these amounts, the maximum that the jury could have awarded based on the record was $1,223,528. The jury awarded $692,699.

In its seventh issue, CBS Outdoor argues that the jury's damage award is unsupportable because it is unrelated to the amounts presented at trial. For support, CBS Outdoor relies on one case for authority: *Malone v. E.I. du Pont de Nemours & Co.*, 8 S.W.3d 710 (Tex. App.—Fort Worth 1999, pet. denied). The facts of *Malone*, however, bear no relationship to CBS Outdoor's complaint. In *Malone*, the issue concerned whether the plaintiff had put on sufficient evidence of lost profits, not whether the jury's determination bore any resemblance to the evidence. *Id.* at 716. Specifically, Malone admitted at trial that his determination of damages was "purely a guess" and was "pulled out of the air." *Id.* The court of appeals held that "this speculative testimony was no evidence of damages." *Id.*

CBS Outdoor's complaint in this issue, in contrast, is that the jury's damage award is unsupportable because it "bears no resemblance to any of the damage testimony adduced at trial." Conflicting evidence about the value of property generally falls into two categories: evidence of two distinct options or evidence of a range for value based on certain factors. *See, e.g.*, *Waterways on the*

*Intercoastal, Ltd. v. State*, 283 S.W.3d 36, 46 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Pleasant v. Bradford*, 260 S.W.3d 546, 559–60 (Tex. App.—Austin 2008, pet. denied). When the testimony supports a range for valuation rather than two distinct options, determination of an award within that range is left to the jury's discretion. *Waterways*, 283 S.W.3d at 46. If the determination is within that range, "a reviewing court is not permitted to speculate on how the jury actually arrived at its award." *Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.—San Antonio 2011, pet. denied).

The testimony concerning the value of the lost profits was not based on a precise and fixed formula. Instead, Albrecht testified about the maximum Potter could have earned from the billboards. He also acknowledged other factors that could have impacted Potter's ability to reach that maximum, such as prolonged vacancies and not being able to reach as many customers.

None of CBS Outdoor's experts offered competing testimony about the lost profits that Potter could have realized. Instead, CBS Outdoor's experts' testimony consisted of critiques of the reliability of Potter's estimation of costs and Albrecht's estimation of lost revenue. The testimony of all of the experts involved established that the jury was presented with an inexact range for determining Potter's lost profits, not a precise set of competing fixed values. The jury's damage award does not exceed the range presented to the jury. Because the jury's

30

damage award is within the permissible range, the amount awarded was within the jury's discretion, and we cannot speculate on how the jury reached its determination. *See id.* "[U]ncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery." *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938); *see also ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 877 (Tex. 2010) (citing *Sw. Battery* and holding "discrepancy between two reasonably certain amounts will not defeat recovery"). Accordingly, we overrule CBS Outdoor's seventh issue.

CBS Outdoor argues in its fifth issue that the evidence is legally and factually insufficient to support the jury's award because Potter's expert's testimony was too flawed and too conclusory to support the jury's award, because Albrecht used "deceptive calculations," and because Albrecht made faulty assumptions. CBS Outdoor's argument for how Albrecht's testimony was flawed consists mostly of pointing to testimony from its own experts on how they disagreed with Albrecht's methodology. For example, CBS Outdoor cites to the testimony of one of its experts testifying that "Albrecht's testimony was based on theoretical capacity, which is performance in a perfect world, as distinguished from practical capacity, and the realistic normal capacity." It also cites testimony of another of its experts, who "confirmed it was not possible for Potter to perform as well as CBS" as Albrecht had suggested.

31

Proof that one expert testified to the contrary of the opponent's expert is not proof that the opponent's methodology is flawed. Instead, conflicts between the experts' testimony are left to the jury to resolve. *See Hous. Lighting & Power Co. v. Dickenson Indep. Sch. Dist.*, 641 S.W.2d 302, 310 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding "Texas courts have held that use of any one particular approach as the sole standard from which to derive value is fundamentally wrong" and that it is the jury's duty to weigh conflicting expert testimony on value).

CBS Outdoor's remaining arguments in its fifth issue suffer from the same problem. Its basis for arguing that Albrecht's testimony should be excluded is that its own experts strongly disagreed with Albrecht on a number of grounds. Pointing out the conflict between the experts' testimony does not establish, by itself, that one expert's opinion must be disregarded. *See id.*

Instead, an expert's opinion must be disregarded when it is conclusory or speculative. *See Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (holding conclusory or speculative expert testimony cannot support a judgment). "An expert's opinion might be unreliable, for example, if it is based on assumed facts that vary from the actual facts . . . or it might be conclusory because it is based on tests or data that do not support the

conclusions reached." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009).

CBS Outdoor argues that Albrecht's assumed facts vary from the actual facts because, while he used CBS Outdoor's numbers of actual revenue for the times it was available, Albrecht deviated from those numbers in making his projections of Potter's potential revenue. The propriety of Albrecht's variation was the subject of much dispute at trial. Albrecht testified that CBS Outdoor had not reached the full potential for each of the signs for the relevant periods for a number of reasons. For example, Albrecht testified that the billboards had been used as bonus billboards, meaning a purchaser of multiple billboards was given an extra billboard or a billboard was used for a public service announcement. The billboards had also been used as part of a rotary program, meaning one advertisement would be moved to various billboards over a set time period. All parties agreed that the rate for rotary program advertising was lower than the rate for advertising on a single billboard for the same period. Because of this and other considerations, Albrecht excluded some lower-selling advertisements from his calculation and increased the average of those remaining by a further 20 to 25 percent.

CBS Outdoor's experts argued that Potter could not receive the same amount of income, let alone more income, than CBS Outdoor. One reason for this, CBS Outdoor argued, was that it had access to national advertisers—as opposed to local

advertisers—that Potter would not have access to. CBS Outdoor contended, and its experts agreed, that CBS Outdoor routinely charged national advertisers above-market rates.[3] CBS Outdoor's experts also argued that the rotary program was a net financial benefit because it allowed billboards to be filled during times that they did not otherwise have an advertiser.

Albrecht recognized that CBS Outdoor had more access to national advertisers than Potter would. He also testified that he included that consideration in forming his opinion. He explained that he disagreed that national advertisers would routinely pay above-market rates. He also testified that CBS Outdoor had made sales to 55 different advertisers for Potter's billboards during the period in dispute. Four of them were national advertisers. Accordingly, CBS Outdoor's greater ability to obtain national advertisers did not have a significant impact on his calculations.

Albrecht also testified that Potter's boards were all in a good location and that, at least through 2009, the market for billboards was rather competitive. Accordingly, the billboards would have had little down time, and inclusion of the

---

[3]   For example, John Clements, executive vice president for real estate and acquisitions for CBS Outdoor, testified that "national companies look like they pay more, and in many cases they do pay more. They pay more because they want that board. They want a higher level of service. They want a specific way that things are done. And as a result, they pay more." One of CBS Outdoor's experts, Allen Brivic, agreed, testifying, "If you look at what advertisers pay for a billboard, the national advertisers tend to overpay, and the local advertisers tend to be smarter with the use of their dollars."

boards in a rotary program would decrease the amount or revenue the billboards could have obtained, not increased it.

All of this testimony, and other testimony like it, shows serious and significant dispute between the parties on what factors would have affected Potter's lost profits during the relevant time period. None of the testimony, however, establishes that Albrecht's testimony was patently conclusory or too speculative; nor did any of the evidence establish that Albrecht's testimony should have been categorically excluded for any other reason. Accordingly, the testimony simply raised conflicts in the evidence, which was left to the jury to resolve. *See Hous. Lighting*, 641 S.W.2d at 310. In fact, it appears that the jury resolved a number of the conflicts in the testimony in favor of CBS Outdoor, reducing Potter's total damage award almost by half. Nothing in the record, however, suggests that Albrecht's testimony was factually or legally insufficient. Accordingly, we overrule CBS Outdoor's fifth issue.

The majority of CBS Outdoor's third issue concerns how comparable CBS Outdoor's sales figures were to what Potter could have earned. As an initial matter, CBS Outdoor argues that Potter could not rely on its sales figures at all, relying on *Texas Instruments*. That case concerns what constitutes "reasonable certainty" when determining lost profits. *Tex. Instruments*, 877 S.W.2d at 279. CBS Outdoor contends that *Texas Instruments* prevented Potter from using its sales

figures as a basis for determining what his sales figures would have been. We disagree.

The Supreme Court of Texas held in *Texas Instruments*, "The fact that a business is new is but one consideration in applying the 'reasonable certainty' test." *Id.* at 280. This does not mean that a new business cannot recover lost profits. *Id.* Instead, profits are only denied when "profits which might have been made from such businesses are not susceptible of being established by proof to that degree of certainty which the law demands." *Id.* The determination of lost profits in such a situation focuses on the experience of the persons involved in the enterprise, the nature of the business activity, and the relevant market. *Id.*

Nothing in *Texas Instruments* categorically denies using the revenue obtained on CBS Outdoor's billboards to determine the lost profits Potter would have received on those exact same billboards. To the contrary, as Potter points out, profits of one business can be used to estimate the lost profits of another similarly situated business. *See Bright v. Addison*, 171 S.W.3d 588, 603 (Tex. App.—Dallas 2005, pet. denied) (upholding trial court's consideration of "actual data from an existing business" to determine the lost profits of a similar business).

CBS Outdoor further complains that Potter's testimony of expenses he would have incurred during the time in question was an estimate and not based on actual numbers. CBS Outdoor fails to identify how Potter could be expected to

produce actual numbers or anything other than an estimate of expenses during the time that he did not have control of the billboards. It also claims that one of its experts, James Mandel, testified that Potter's estimate of expenses was fabricated. Mandel testified that he—that is, that Mandel—did not have any documentary support for Potter's estimate and so, "from an empiricist's point of view[,] it's pulled out of thin air." "Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates." *Holt Atherton*, 835 S.W.2d at 84. At best, Mandel's claim created a fact issue for the jury to resolve. *See Hous. Lighting*, 641 S.W.2d at 310.

CBS Outdoor also points to claimed irregularities in Potter's business records to try to undermine the value of his testimony on expenses. For support, CBS Outdoor points to portions of the clerk's record. None of this evidence of claimed irregularity was presented to the jury at trial. Accordingly, it cannot be a basis for establishing legal or factual insufficiency of the jury's fact determinations. *See City of Keller*, 168 S.W.3d at 827 (holding legal sufficiency is established when "*evidence at trial* would enable reasonable and fair-minded people to reach the verdict under review" (emphasis added)); *Toles v. Toles*, 45 S.W.3d 252, 259 (Tex. App.—Dallas 2001, pet. denied) (holding "[w]e review a

37

factual sufficiency challenge to the jury verdict by examining all of the *evidence presented at trial*" (emphasis added)).

The remainder of CBS Outdoor's third issue raises matters we have already addressed in other issues, such as whether the evidence established that Potter could have realized the same amount of revenue that CBS Outdoor realized and whether lost profits was a remedy available to Potter as a result of the breach of the original leases. Because we have addressed these issues above, we do not need to re-address them here.

We overrule CBS Outdoor's third issue.

## Charge Error

In its eighth issue, CBS Outdoor argues that the trial court abused its discretion by failing to include instructions in the jury charge on waiver and excuse and a question on excuse. In order to obtain reversal on appeal, the appellant must show that it suffered harm as a result of an alleged error. *See* TEX. R. APP. P. 44.1 (requiring determination of harm for reversal); *In re Marriage of Scott*, 117 S.W.3d 580, 584 (Tex. App.—Amarillo 2003, no pet.) (holding appellant bears burden of establishing harm). CBS Outdoor's argument for how it was harmed by the alleged error consists of one sentence: "The failure to submit the instructions and question amounted to such a denial of CBS's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment."

38

"The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i).  An appellate court has no duty to search through the record without guidance from the appellant "to determine whether its assertion of reversible error is valid." *G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 546 (Tex. App.—Dallas 2005, no pet.).  Moreover, we are not responsible for making the appellant's arguments for it. *Id.*

We hold that this issue is waived for inadequate briefing.  We overrule CBS Outdoor's eighth issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.